UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>RYAN W. PAYNE,<br><br>Defendant. | Case No. 2:16-cr-00046-GMN-PAL<br><br>**ORDER**<br>**-and-**<br>**REPORT OF FINDINGS AND**<br>**RECOMMENDATION**<br><br>(Mots to Dismiss - ECF Nos. 754, 757) |

This matter is before the court on Defendant Ryan W. Payne's Motion to Dismiss Counts Two and Three on Overbreadth Grounds (ECF No. 754)[1] (the "Overbreadth Motion") and Motion to Dismiss Counts Two and Three on Vagueness Grounds (ECF No. 757) (the "Vagueness Motion"),[2] filed October 3, 2016. These Motions are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has considered the Motions, defendants' Joinders, the government's Combined Response (ECF No. 933), and Payne's Replies (ECF No. 958, 959).

## BACKGROUND

### I.      The Superseding Indictment

Defendant Ryan Payne and 18 co-defendants are charged in a Superseding Indictment (ECF No. 27) returned March 2, 2016, alleging 16 separate counts. The superseding indictment

---

[1] Defendants Cliven D. Bundy, Ammon E. Bundy, Mel D. Bundy, Dave H. Bundy, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, Joseph D. O'Shaughnessy, Micah L. McGuire, Jason D. Woods have filed Motions for Joinder (ECF Nos. 756, 771, 773, 777, 795, 800, 816, 827, 842, 855, 880) to the Overbreadth Motion.

[2] Defendants Cliven D. Bundy, Ammon E. Bundy, Dave H. Bundy, Brian D. Cavalier, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, Joseph D. O'Shaughnessy, Micah L. McGuire, Jason D. Woods have filed Motions for Joinder (ECF Nos. 770, 774, 776, 786, 796, 801, 806, 827, 843, 856, 880) to the Vagueness Motion.

1

in this case arises out of a series of events related to a Bureau of Land Management ("BLM") impoundment of Cliven Bundy's cattle following a two-decade-long battle with the federal government. Beginning in 1993, Cliven Bundy continued to graze cattle on land commonly referred to as the "Bunkerville Allotment" without paying required grazing fees or obtaining required permits. The United States initiated civil litigation against Cliven Bundy in 1998 in the United States District Court for the District of Nevada. The court found that Cliven Bundy had engaged in unauthorized and unlawful grazing of his livestock on property owned by the United States and administered by the Department of the Interior through the BLM. The court permanently enjoined Cliven Bundy from grazing his livestock on the Allotment, ordered him to remove them, and authorized the BLM to impound any unauthorized cattle. Bundy did not remove his cattle or comply with the court's order and injunction. The United States went back to court. Subsequent orders were entered in 1999 and 2013 by different judges in this district permanently enjoining Bundy from trespassing on the Allotment and land administered by the National Park Services ("NPS") in the Lake Mead National Recreation Area,[3] ordering Bundy to remove his cattle, and explicitly authorizing the United States to seize, remove, and impound any of Bundy's cattle for future trespasses, provided that written notice was given to Bundy.

On February 17, 2014, the BLM entered into a contract with a civilian contractor in Utah to round up and gather Bundy's trespass cattle. BLM developed an impoundment plan to establish a base of operations on public lands near Bunkerville, Nevada, about seven miles from the Bundy ranch in an area commonly referred to as the Toquop Wash. On March 20, 2014, BLM also entered into a contract with an auctioneer in Utah who was to sell impounded cattle at a public sale. Bundy was formally notified that impoundment operations would take place on March 14, 2014. The following day, Bundy allegedly threatened to interfere with the impoundment operation by stating publicly that he was "ready to do battle" with the BLM, and would "do whatever it takes" to protect "his property." The superseding indictment alleges that after being notified that BLM intended to impound his cattle, Bundy began to threaten to interfere with the impoundment operation, and

---

[3] By 2012, Bundy's cattle had multiplied and he also began grazing his cattle on land administered by the NPS in the Lake Mead National Recreation Area without obtaining grazing permits or paying grazing fees.

made public statements he intended to organize people to come to Nevada in a "range war" with BLM and would do whatever it took to protect his cattle and property.

The superseding indictment alleges that, beginning in March 2014, the 19 defendants charged in this case planned, organized, conspired, led and/or participated as followers and gunmen in a massive armed assault against federal law enforcement officers to threaten, intimidate, and extort the officers into abandoning approximately 400 head of cattle owned by Cliven Bundy. The removal and impoundment operation began on April 5, 2014. On April 12, 2014, defendants and hundreds of recruited "followers" executed a plan to recover the cattle by force, threats, and intimidation. Defendants and their followers demanded that officers leave and abandon the cattle and threatened to use force if the officers did not do so. The superseding indictment alleges armed gunmen took sniper positions behind concrete barriers and aimed their assault rifles at the officers. Defendants and their followers outnumbered the officers by more than 4 to 1, and the potential firefight posed a threat to the lives of the officers, as well as unarmed bystanders which included children. Thus, the officers were forced to leave and abandon the impounded cattle.

After the April 12, 2014 confrontation with federal officers, the superseding indictment alleges that the leaders and organizers of the conspiracy organized armed security patrols and check points in and around Cliven Bundy's Bunkerville ranch to deter and prevent any future law enforcement actions against Bundy or his co-conspirators, and to protect Bundy's cattle from future law enforcement actions.

**II.   Charges and Statutes Relevant to the Current Motion**

As relevant to the current motions, all 19 defendants are charged in the following counts:

- Count Two – Conspiracy to impede or injure a federal officer in violation of 18 U.S.C. § 372.
- Count Three – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.

These charges arise from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016. More specifically, Count Two alleges:

> Beginning in at least March 2014 and continuing to on or about the date of this Superseding Indictment, in the State and Federal District of Nevada and elsewhere, [defendants] did knowingly and willfully combine, conspire, confederate, and agree

3

> with each other, and with others known and unknown to the Grand Jury, to prevent by force, intimidation, and threats of violence, federal law enforcement officers from discharging the duties of their office under the United States, and to induce by force, intimidation, and threats, federal law enforcement officers to leave the place where their duties were required to be performed, that is, enforcing and executing federal Court Orders to remove trespass cattle from federal public lands and enforcing federal laws and regulations on federal public lands in and around the Allotment.

Superseding Indictment (ECF No. 27) ¶ 158. Count Three alleges that defendants each knowingly used and carried firearms, which were brandished, during and in relation to a crime of violence (as alleged in Count Two), and aided and abetted each other in doing so. *Id*. ¶ 160. The relevant statute, § 372 provides as follows:

> If two or more persons in any State, Territory, Possession, or District conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, or to induce by like means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both.

18 U.S.C. § 372.

## DISCUSSION

### I.     Legal Standard for Motions to Dismiss

Payne's motions assert that Counts Two and Three should be dismissed for failure to state an offense. Pursuant to Rule 12 of the Federal Rule of Criminal Procedure,[4] a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) specifies the motions which must be made before trial. Among them is a motion to dismiss for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(v). A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact. *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

In ruling on a pretrial motion to dismiss, the district court is "bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an

---

[4] All references to a "Rule" or the "Rules" in this Order refer to the Federal Rules of Criminal Procedure.

4

offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."). The court should not consider evidence that does not appear on the face of the indictment. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). Thus, a defendant is not entitled to a pre-trial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses. *Id.* at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence."). In determining whether a cognizable offense has been charged, the court does not consider whether the government can *prove* its case, only whether accepting the facts as alleged in the indictment as true, a crime has been alleged. *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012). However, dismissal of an indictment is appropriate when charges are based on "a statute that is unconstitutional on its face or as applied." *United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007) (citing *United States v. Lopez*, 514 U.S. 549 (1995)).

**II.    The Vagueness Motion (ECF No. 757).**

**A. Payne's Motion**

The Vagueness Motion argues that § 372 is unconstitutionally vague, both on its face and as applied to Payne, because it criminalizes protected speech and conduct. The conduct alleged in the superseding indictment is protected by the First Amendment, which includes the right to gather together to protest polices and conduct of the federal government. The statute fails to provide appropriate limiting language to avoid chilling the exercise of constitutionally protected rights. The vagueness of § 372 threatens Payne's freedom of speech, freedom of assembly, and the right to possess firearms, which may also constitute symbolic free speech.

Section 372 does not provide fair notice as to when, if ever, conduct will cross the line from dissent to intimidation because it fails to inform a person of ordinary intelligence what conduct is prohibited. Payne argues § 372 is unconstitutionally vague because it: (1) lacks a mens rea requirement, (2) fails to provide notice whether conduct will be evaluated from an objective or subjective prospective, and (3) provides no definition for key terms such as "force," "intimidation," "threat," "officer," or "duties." Additionally, the statute promotes discriminatory enforcement because it is the government that determines whether the manner of protest is

sufficiently threatening and intimidating to warrant federal felony charges. As a result, "there is an unconstitutional lack of notice as to when a group of like-minded protesters practicing civil disobedience against the federal government becomes a group of criminal conspirators." Mot. at 13. Given the statute's vagueness, Payne asks the court to dismiss Counts Two and Three.

### B. The Government's Response

The government's Response (ECF No. 933) asserts that § 372 is not vague, either as applied to Payne or on its face, because the law provides adequate notice to a person of ordinary intelligence. The statutory terms "force, intimidation, or threat" are not complicated terms or terms difficult to understand; rather, they are common in federal criminal law and defined in dictionaries. The Ninth Circuit has rejected a similar vagueness challenge to a statute that prohibited injuring, intimidating, or interfering, "by force of threat of force." Response at 22 (citing *United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir. 1987) (examining 42 U.S.C. § 3631, and holding that legislation did not criminalize threats generally and therefore was not void for vagueness)). Cases addressing § 372 have consistently upheld the sufficiency of the evidence. *Id.* at 23–24 (collecting cases). Payne's speculation about possible vagueness in hypothetical situations does not support a facial attack on § 372 because the statute is valid in the vast majority of its intended applications. A criminal statute is not required to state a precise definition of prohibited conduct. It only requires fair notice of what is prohibited, and § 372 provides fair notice.

Additionally, the statute is not vague based on the government's authority to exercise prosecutorial discretion. Payne's opposition to the federal government does not immunize his alleged violent conduct, or transform this prosecution into an arbitrary enforcement action. Rather, the alleged conduct shows that this case is proper for prosecution "due to the danger [defendants] pose not only to our country's law enforcement officers, but also to the very rule of law." Response at 24. Section 372 is straightforward: it prohibits individuals from conspiring to keep government employees from doing their jobs. The government will offer evidence at trial showing that defendants conspired with one another to conduct a massive, coordinated, armed assault on federal agents, forcing them under the threat of an exchange of gunfire to abandon their duties. This is

conduct explicitly and clearly prohibited by § 372.  Accordingly, § 372 is not void for vagueness either on its face or as applied to Payne.

### III. The Void for Vagueness Doctrine

The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law.  U.S. Const. amend. V; *see also Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 819 (9th Cir. 2016) (quoting *Johnson v. United States*, --- U.S. ----, 135 S. Ct. 2551, 2556 (2015)).  The Due Process Clause requires that a criminal law provide the kind of notice that will enable ordinary people to understand what the law prohibits. *Id*.  For statutes involving criminal sanctions, "the requirement for clarity is enhanced." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (quoting *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009)).  "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." *Valenzuela Gallardo*, 818 F.3d at 819 (quoting *Johnson*, 135 S. Ct. at 2556–57) (internal bracketing omitted).  However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

A criminal statute is unconstitutionally vague "if it is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement." *United States v. Chhun*, 744 F.3d 1110, 1117 (9th Cir. 2014) (quoting *Harris*, 705 F.3d at 932).  The Ninth Circuit has recognized three reasons for invalidating vague statutes: "(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014) (quoting *Kilbride*, 584 F.3d at 1256).

In general, the First Amendment prohibits the government from restricting expression because of its message, ideas, subject matter, or content. *United States v. Alvarez*, --- U.S. ----,

7

132 S. Ct. 2537, 2543 (2012) (citing *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002)). Content-based restrictions on speech are presumed invalid, and the government bears the burden of showing they are constitutional. *Id*. at 2544. However, the government may restrict some speech without violating the First Amendment. *Id.* at 2547. From 1791 to the present, the Supreme Court has upheld content-based restrictions on speech based on an ad hoc balancing of relative social costs and benefits in a limited number of situations. *Id*. at 2537. Content-based restrictions on speech have been permitted for a few "historic and traditional categories of expression," including: incitement to imminent lawless actions, obscenity, defamation, so-called "fighting words," true threats, child pornography, fraud, speech integral to criminal conduct, and speech presenting some grave and imminent threat the government has the power to prevent. *Id*. at 2544 (collecting cases) (internal punctuation and citation omitted).

Section 372 is not a content based or viewpoint regulation of speech or expressive conduct. The Ninth Circuit has held that § 372 is not impermissibly vague as applied to a defendant who filed false UCC forms, and issued an illegitimate arrest warrant directed to a United States bankruptcy judge. *United States v. Fulbright*, 105 F.3d 443, 452 (9th Cir. 1997), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007). In *Fulbright*, the defendant claimed that the statutes of conviction, §§ 372 and 1503, were unconstitutional as applied to his conduct. The defendant filed UCC forms and an illegitimate arrest warrant directed to the bankruptcy judge presiding over his bankruptcy proceeding. He claimed that filing these documents could not constitute force or threat or intimidation within the meaning of § 372. However, the Ninth Circuit rejected these arguments finding "it is the nature of these documents, not the simple act of filing them, that brings them within the statutes' purview." *Id*. The *Fulbright* court found that filing a *false* UCC form and issuing an *illegitimate* arrest warrant is prohibited and the statutes were not impermissibly vague as applied. The Ninth Circuit rejected the defendant's contention the § 372 was an overbroad content and viewpoint regulation in violation of the First Amendment. *Id.* The court found that the government has a legitimate interest in preventing the intimidation of public officials, that the statute did not punish filing authorized court documents, and therefore did not implicate a legitimate free speech interest. *Id.*

8

It is well established that the First Amendment does not prohibit the government from criminalizing speech that is integral to criminal conduct. *Osinger*, 753 F.3d at 946 (quoting *United States v. Meredith*, 685 F.3d 814, 819–20 (9th Cir. 2012)). "The right to speak is not unlimited," and the degree of scrutiny courts apply to "challenged speech varies depending on the circumstances and the type of speech at issue." *United States v. Szabo*, 760 F.3d 997, 1001–02 (9th Cir. 2014) (internal citation omitted). The Supreme Court has repeatedly held that any expressive aspects of a defendant's speech are not protected under the First Amendment when they are "integral to criminal conduct." *Osinger*, 753 F.3d at 947; *see also Gibony v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (speech and writing "used as an integral part of conduct in violation of a valid criminal statute" is not protected by the First Amendment) (citing *Fox v. Washington*, 236 U.S. 273, 277 (1915); *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)). For example, speech used to commit blackmail and extortion, such as threats that the speaker will say or do something unpleasant unless the victim takes, or refrains from taking, certain action, is not constitutionally protected. *See, e.g.*, *Planned Parenthood*, 244 F.3d 1007, 1015 n.8 (9th Cir. 2001) (citing *Watts*, 394 U.S. 705), *aff'd in part, rev'd in part on r'hg en banc*, 290 F.3d 1058 (9th Cir. 2002).

Speech that "threatens a person with violence is not protected by the First Amendment." *Szabo*, 760 F.3d at 1002 (citing *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1072 (9th Cir. 2002)) ("[W]hile advocating violence is protected, threatening a person with violence is not."). "*Threats*, in whatever forum, may be . . . proscribed without implicating the First Amendment." *Id.* (citing *Planned* Parenthood, 290 F.3d at 1076, n.11 (collecting cases)). Although threat statutes are interpreted in light of the First Amendment, the Supreme Court has "left no doubt that true threats [can] be criminalized because they are not protected speech." *United States v. Hanna*, 293 F.3d 1080, 1084 (9th Cir. 2002) (citing *Watts v. United States*, 394 U.S. 705, 707 (1969)); *United States v. Bagdasarian*, 652 F.3d 1113, 1116 (9th Cir. 2011) (the First Amendment does not immunize "true threats") (citing *Virginia v. Black*, 538 U.S. 343, 359 (2003)).

/ / /

"A statement is a 'true threat' if a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *United States v. Stewart*, 420 F.3d 1007, 1016–17 (9th Cir. 2005) (internal citation omitted); *see also Virginia v. Black*, 538 U.S. 343, 359 (2003). A statement is a "true threat" and subject to criminal liability only when the speaker subjectively intends the speech as a threat. *Bagdasarian*, 652 F.3d at 1117–18; *see also Elonis v. United States*, --- U.S. ----, 135 S. Ct. 2001, 2012 (2015) (to convict for communicating a threat, the government must prove that a defendant made a communication for the subjective purpose of issuing a threat).

"When a statute clearly implicates free speech rights, it will survive a facial challenge so long as it is clear what the statute proscribes in the vast majority of its intended applications." *Humanitarian Law Project v. United States Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009) (internal citation omitted). When the challenged laws do not involve First Amendment rights, vagueness is evaluated on an as-applied basis and "must be examined in the light of the facts of the case at hand." *Harris*, 705 F.3d at 932. "In an as-applied challenge, a statute is unconstitutionally vague if it 'fails to put a defendant on notice that his conduct was criminal'." *Osinger*, 753 F.3d at 945 (quoting *Harris*, 705 F.3d at 932). The inquiry is specific to the individual defendant and "turns on whether the statute provided adequate notice *to him* that *his particular conduct* was proscribed." *Harris*, 705 F.3d at 932 (quoting *Kilbride*, 584 F.3d at 1257) (emphasis added). If a statute "is constitutional as applied to the individual asserting the challenge, the statute is facially valid." *Hess v. Bd. of Parole & Post-Prison Supervision*, 514 F.3d 909, 913 (9th Cir. 2008) (quoting *United States v. Dang*, 488 F.3d 1135, 1141 (9th Cir. 2007)).

Traditionally, a challenger could succeed on a facial challenge only if a statute was "impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). The Ninth Circuit has described this as an "all-or-nothing principle." *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003). That high bar was grounded in the understanding that a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (quoting *Hoffman Estates*,

455 U.S. at 495). For over a decade the Ninth Circuit has cautioned that the plurality opinion in *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999), casts some doubt on the all-or-nothing standard and has prefaced its rulings with the caveat that the standard would apply until a majority of the Supreme Court directs otherwise. *See Oakland*, 344 F.3d at 972; *United States v. Inzunza*, 638 F.3d 1006, 1019 n.4 (9th Cir. 2011).

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court recently questioned the continuing validity of the all-or-nothing approach to void for vagueness challenges. The *Johnson* court noted that prior Supreme Court cases "squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 2561. The majority rejected the dissent's view that a statute is void for vagueness only if it is vague in all its applications, describing this as "not a requirement at all, but a tautology." *Id.*

The court need not decide the continued viability of the all-or-nothing approach to a facial constitutional challenge to a statute because the conduct prohibited by § 372 is conspiring to prevent a federal officer from discharging his or her official duties by force, intimidation, or threat. The statute does not regulate or chill speech because of its message, ideas, subject matter, or content; rather, § 372 regulates criminal conduct.

Although § 372 itself does not contain limiting language, well-established legal principles appropriately limit the statute's sweep. For example, the Ninth Circuit has limited threat statutes to true threats. *See, e.g.*, *Bagdasarian*, 652 F.3d at 1116; *Hanna*, 293 F.3d at 1084. Additionally, § 372 is a conspiracy statute that requires proof of a defendant's intent to prevent a federal officer from discharging his or her duties by force, threat, or intimidation. *See, e.g.*, 9th Cir. Model Crim. Jury Instructions 8.20 "Conspiracy – Elements" (2010 ed.) (updated Dec. 2016). Thus, a defendant may not be convicted of this offense simply because a federal officer subjectively felt threatened. A "scienter requirement" mitigates vagueness, "especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *United States v. Jae Gab Kim*, 449 F.3d 933, 943 (9th Cir. 2006); *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (finding that "the

1 narrowing construction provided by the relevant cases actually alleviates possible void-for-
2 vagueness concerns").

3 Furthermore, the fact that § 372 does not statutorily define certain terms does not make the
4 statute vague. *See Osinger*, 753 F.3d at 945 (rejecting argument that statue was vague because
5 key terms were not defined) (quoting *Kilbride*, 584 F.3d at 1256 (same)). The terms force,
6 intimidation, threat, officer, and duties are not legal terms of art. Ordinary citizens can readily
7 understand their meaning. A reasonable person would have no difficulty recognizing what conduct
8 § 372 prohibits, therefore, the statute is not void for vagueness on its face.

9 Finally, § 372 is not void for vagueness as applied to Payne. Accepting the allegations in
10 the superseding indictment as true, Payne is charged with intentionally conspiring to prevent a
11 federal officer from discharging his or her official duties by force, intimidation, or threat. *See*
12 *Osinger*, 753 F.3d at 947. Section 372 placed defendants on adequate notice that their conduct
13 was criminal.

**IV. The Overbreadth Motion (ECF No. 754)**

**A. Payne's Motion**

16 The Overbreadth Motion asserts that § 372 is constitutionally overbroad because it
17 criminalizes protected speech and conduct. He argues that on its face, § 372 is a long, convoluted
18 sentence that fails to define key terms, such as "force, intimidation, or threat," or provide a
19 necessary mental state. Only "true threats" are not protected by the First Amendment. However,
20 § 372 does not limit the statute's application to true threats. Thus, § 372 may criminalize
21 constitutionally protected speech such as political rhetoric, hyperbole, or even gun possession,
22 which can also constitute speech. Mot. at 8 (quoting *Nordyke v. King*, 319 F.3d 1185, 1190 (9th
23 Cir. 2003) ("[A] gun protestor burning a gun may be engaged in expressive conduct. So might a
24 gun supporter waiving a gun at an anti-gun control rally.")). Because the application of § 372 will
25 in many cases include conduct protected by the First Amendment, the statute is impermissibly
26 overbroad and the court should dismiss Counts Two and Three.

27 / / /
28 / / /

### B. The Government's Response

The government asserts that § 372 is not overbroad either as applied to Payne or on its face because the law does not reach a substantial amount of constitutionally protected conduct. Although broadly worded laws may incidentally sweep expressive conduct within their scope, that does not justify invalidating "otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." Response at 6 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). Payne's arguments rely on the faulty premise that § 372 was constructed principally to unlawfully target speech. By its terms, however, § 372 cannot apply to protected conduct because the conspiracy element of § 372 requires that the defendant have the subjective intent to prevent the officer from discharging his duties and to achieve this goal by using "force, intimidation, or threats." Such conduct goes beyond a simple threat.

## V. The First Amendment Overbreadth Doctrine

It is well-established that a person to whom a statute may be constitutionally applied cannot challenge that statute because it could conceivably be applied unconstitutionally to others in situations not before the court. *New York v. Ferber*, 458 U.S. 747, 767 (1982); *Broadrick*, 413 U.S. at 610. This rule is based on two cardinal principles of constitutional law. *Ferber*, 458 U.S. at 768. First, constitutional rights are personal in nature. *Id.* Second, Article III of the Constitution limits the jurisdiction of the federal courts to actual cases and controversies. *Id.* This means that the court must not: (a) anticipate a question of constitutional law in advance of the necessity of deciding it; or (b) formulate a rule of constitutional law broader than required by the precise facts to which the rule will be applied. *Id.* at n.20.

However, when First Amendment rights are implicated, the Supreme Court has carved out an exception to this rule and allowed constitutional overbreadth challenges even when the challenger's conduct may be legitimately regulated under the statute. "Under the doctrine of First Amendment overbreadth, a litigant may mount a facial attack on a statute that restricts protected speech even if the litigant's own speech is unprotected." *Turney v. Pugh*, 400 F.3d 1197, 1200 (9th Cir. 2005). The First Amendment overbreadth doctrine is based on the weighty countervailing

policy that constitutionally-protected speech could be chilled by the fear of criminal sanctions. *Ferber*, 458 U.S. at 768. For this reason, the Supreme Court has allowed challenges to overly broad statutes even though the conduct of the person challenging the statute "is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *Id*. at 769 (citations omitted). However, the Supreme Court has made clear that the First Amendment overbreadth doctrine is "strong medicine" only to be used as a last resort where a statute implicates a "substantial" amount of protected expression. *Williams*, 553 U.S. at 292. Particularly where "conduct and not merely speech is involved," a statute's overbreadth must be real and substantial. *Ferber*, 458 U.S. at 770. *United States v. Stevens*, 559 U.S. 460, 472 (2010) ("[A] law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'") (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)); *Turney*, 400 F.3d at 1200 ("The overbreadth must be substantial in order for the statute to be invalidated on its face; the fact that a court may conceive of a single impermissible application is insufficient to justify striking down the law."). When a law or regulation is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)," an overbreadth challenge will "rarely succeed." *Osinger*, 753 F.3d at 944 (quoting *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012)).

In deciding whether a federal statute is overbroad, the court must construe the statute to avoid constitutional problems if the statute is subject to a limiting construction. *Ferber*, 458 U.S. at 769 (citing *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). Additionally, even if a federal statute is impermissibly overbroad and not subject to a narrowing construction, the law should not be stricken as invalid on its face if the invalid portion is severable from the remainder of the statute. *Id.* (citing *United States v. Thirty-Seven Photographs*, 402 U.S. 363 (1971)). Rather, if the overbroad law is severable, only the unconstitutional portion should be declared invalid. *Id*. The Supreme Court has declined to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied. *Parker v. Levy*, 417 U.S. 733, 760 (1974). Thus, even if there are marginal applications in which a statute would infringe on speech

protected by the First Amendment, a court should not declare the statute facially invalid if it also covers a range of easily identifiable conduct that may be constitutionally proscribed. *Id.* In fact, the Supreme Court's general practice when confronted with a facial overbreadth challenge to a criminal statute sought to be applied against protected conduct is to reverse a particular conviction, rather than to invalidate the law in its entirety. *Ferber*, 458 U.S. at 773.

As explained in the preceding section, the Ninth Circuit has explicitly rejected Payne's argument that § 372 is an overbroad content and viewpoint-based regulation which violates the First Amendment. *Fulbright*, 105 F.3d at 452. The fact that § 372 does not contain statutory language distinguishing between threats and "true threats" also does not render § 372 overbroad because courts routinely construe criminal threat statutes to apply only to true threats. *See, e.g.*, *Ferber*, 458 U.S. at 769; *Sutcliffe*, 505 F.3d at 953. The mens rea requirement of § 372 prevents the statute from applying to mere hyperbole or criticism of government officials or to circumstances in which an official subjectively felt intimidated or threatened because this type of conspiracy requires proof the defendant intended to prevent the officer from discharging his or her duties, and proof the defendant accomplished that objective by using force, intimidation, or threats. *See Fulbright*, 105 F.3d at 452 (finding that § 372 was not an over-broad content and viewpoint regulation in violation of the First Amendment and no legitimate free speech interest was implicated). Section 372 criminalizes conduct and not merely speech. Payne has not shown that it is unconstitutionally overbroad.

For the reasons explained,

**IT IS ORDERED** that**:**

1. Defendants Cliven D. Bundy, Ammon E. Bundy, Mel D. Bundy, Dave H. Bundy, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, Joseph D. O'Shaughnessy, Micah L. McGuire, Jason D. Woods have filed Motions for Joinder (ECF Nos. 756, 771, 773, 777, 795, 800, 816, 827, 842, 855, 880) to Payne's Overbreadth Motion are **GRANTED**, that is, all requests to join in the substantive arguments are granted.

2. Defendants Cliven D. Bundy, Ammon E. Bundy, Dave H. Bundy, Brian D. Cavalier, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, Joseph D. O'Shaughnessy, Micah L. McGuire, Jason D. Woods have filed Motions for Joinder (ECF Nos. 770, 774, 776, 786, 796, 801, 806, 827, 843, 856, 880) to Payne's Vagueness Motion are **GRANTED**, that is, all requests to join in the substantive arguments are granted.

**IT IS RECOMMENDED** that Defendant Ryan W. Payne's Motion to Dismiss Counts Two and Three on Overbreadth Grounds (ECF No. 754) and Motion to Dismiss Counts Two and Three on Vagueness Grounds (ECF No. 757) **be DENIED**.

DATED this 3rd day of January, 2017.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE