UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. MICAH McGUIRE Defendant. | Case No. 2:16-cr-00046- GMN-PAL **ORDER AND REPORT OF FINDINGS AND RECOMMENDATION** (Mot. to Suppress – ECF No. 706) |

Before the court is Defendant Micah McGuire's ("McGuire") Motion to Suppress all Evidence Recovered from his Facebook Account and Fruits Derived Therefrom (ECF No. 706), which was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has considered the motion, Sealed Exhibits (ECF No. 707), the Government's Response in Opposition (ECF No. 927), and McGuire's Reply (ECF No. 945). Defendants Mel Bundy, Joseph D. O'Shaughnessy, Ryan Payne, Ammon Bundy, and O. Scott Drexler filed Joinders (ECF Nos. 817, 818, 828, 834, 877). The court addressed Drexler's Joinder in a separate Order (ECF No. 1470).

## BACKGROUND

### I. THE INDICTMENT

Defendant Micah McGuire is charged in a Superseding Indictment (ECF No. 27) returned March 2, 2016, along with 18 other co-defendants, with:

- Count One – Conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.
- Count Two – Conspiracy to impede or injure a federal officer in violation of 18 U.S.C. § 372. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.

/ / /

- Count Five – Assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b) and§ 2. This charge arises from conduct that allegedly occurred on April 12, 2014.
- Count Six – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.
- Count Eight – Threatening a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.
- Count Nine – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.
- Count Twelve – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.
- Count Fourteen – Interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 and § 2. This charge arises from conduct that allegedly on April 12, 2014.
- Count Fifteen – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.
- Count Sixteen – Interstate travel in aid of extortion in violation of 18 U.S.C. § 1952 and § 2. This charge arises from conduct that allegedly occurred sometime between April 5, 2014 and April 12, 2016.

## II. The Parties' Positions

### A. McGuire's Motion to Suppress

In the current motion, McGuire seeks to suppress all evidence obtained from the government's search of his Facebook account, which was obtained based on a search warrant issued by a magistrate judge in this district. McGuire argues that the search warrant was invalid, and the government's search of his Facebook account was illegal because a Nevada magistrate judge lacked authority under Rule 41 of the Federal Rules of Criminal Procedure[1] and 28 U.S.C. § 636(a) to issue a search warrant for information located in California. A copy of the search and seizure warrant issued by the Honorable George W. Foley, Jr., on June 5, 2015, and the supporting affidavit, is attached as Exhibit A to the motion. The application described the property to be searched as "information associated with" McGuire's Facebook user identification number. This information was stored at the premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered in Menlo Park, California. The search warrant sought information

[1] All references to a "Rule" or "Rules" in this Order refer to the Federal Rules of Criminal Procedure.

associated with McGuire's Facebook account for March 28, 2014, to the date the warrant was issued, June 5, 2015. As part of the discovery in this case, defense counsel has received in excess of 13,000 pages of information purportedly from McGuire's Facebook account.

McGuire argues that information from his Facebook account may not be obtained through a search warrant issued by a District of Nevada magistrate judge because it exceeds the jurisdictional limitations on magistrate judge authority under Rule 41 and 28 U.S.C. § 636(a). He maintains these rules permit a magistrate judge to issue search warrants only for locations within the judicial district in which they sit with minor exceptions not relevant to this case. He also points out that the first page of the warrant itself states the property that is the subject of the warrant is located in the District of Nevada, which confirms that a Nevada magistrate judge lacked jurisdiction. The court must therefore suppress the Facebook evidence and any fruits derived from it because the court lacks jurisdiction to issue a warrant for search of property in California. Citing *United States v. Krueger*, 809 F.3d 1109, 1126 (10th Cir. 2015), McGuire argues the warrant was void *ab initio*.

The motion relies on a decision in the Southern District of Texas holding the court lacked jurisdiction to issue a search warrant for a target computer, the whereabouts of which were unknown. *In re Warrant to Search a Target Computer at Premises Unknown*, 958 F. Supp. 2d 753, 757 (S.D. Tex. 2013). McGuire points out that after this decision, the Department of Justice sought changes to Rule 41 that would theoretically facilitate law enforcement efforts to obtain warrants to hack computers in unknown locations. The Supreme Court opted to amend Rule 41 effective December 1, 2016, unless Congress intervenes. The amendment to Rule 41 will give magistrate judges the "authority to issue a warrant to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district." *Letters from Chief Justice John Roberts to Paul D. Ryan and Joseph R. Biden, Jr.* (April 28, 2016) (with copies of the Rule 41 amendment approved by the Supreme Court). If the amendments to Rule 41 become effective December 1, 2016, it will give magistrate judges additional authority to issue warrants for electronically stored information in cases in which either (1) "the district where the media or information is located has been concealed through technological means," or (2) in

limited computer fraud hacking cases covering five or more districts. *Id.* These amendments will expand magistrate judge authority to issue warrants. However, they will not be effective until December 1, 2016, assuming Congress does not intervene. Therefore, these amendments have no effect or impact on the warrant issued in this case.

McGuire also argues the warrant in this case "runs afoul" of 28 U.S.C. § 636, which restricts magistrate judge authority to the territory in which the magistrate judge sits. Specifically, § 636(a) provides that the magistrate judge has power: (1) "within the district in which sessions are held by the court that appointed the magistrate judge"; (2) other places where that district court may function; and (3) elsewhere as authorized by law. None of these provisions salvage the warrant at issue because the warrant sought property held outside of Nevada. McGuire maintains the government could have sought a warrant from the district judge, "which would have neutralized the Section 636 statutory argument against the warrant in this case." The government could also have sought a warrant from a magistrate judge in the Northern District of California. However, because it did neither, the warrant issued by Judge Foley was void *ab initio*.

Under these circumstances, the exclusionary rule should be applied. McGuire has been prejudiced because of the government's intentional and deliberate disregard of the jurisdictional limitations of Rule 41 and § 636(a). The court should also extend the exclusionary rule to any evidence derived from information learned by reviewing McGuire's Facebook account. Citing *United States v. Leon*, 268 U.S. 897 (1984), McGuire argues the good-faith exception does not apply where, as here, the warrant was void *ab initio*.

**B. The Government's Response**

The government opposes the motion arguing the Electronic Communications Privacy Act ("ECPA") authorizes warrants for electronic communications stored electronically by a service provider outside the district of the authorizing magistrate judge. In this case, Judge Foley issued a search warrant for information related to McGuire's Facebook account that was "stored at premises controlled by Facebook, Inc., a company headquartered in Menlo Park, California." The affidavit in support of the application for the search warrant indicates that the affiant sought, and planned to execute, the warrant under the provisions of the ECPA. The affidavit supporting the

application consists of over 60 pages of facts establishing probable cause to seize the items. The affiant was placed under oath, the magistrate judge reviewed the affidavit and issued the warrant. Law enforcement officers timely executed it and Facebook disclosed responsive information. The court should therefore deny the motion to suppress.

The government maintains that McGuire is simply wrong that Judge Foley lacked jurisdiction under Rule 41 and 28 U.S.C. § 636(a) to issue the warrant involved in this motion. The ECPA specifically authorizes extra-territorial warrants for electronically stored communications from a service provider in 18 U.S.C. § 2703. Facebook is a service provider and the warrant sought electronically stored information related to potential violations of crimes specified in the warrant application.

The government cites a number of decisions in other districts that have addressed this issue and found that Rule 41 poses no jurisdictional impediment to warrants issued under § 2703. The government also argues that McGuire's reliance on *In re Warrant*, 958 F. Supp. 2d 753 (S.D. Tex. 2013), and *United States v. Levin*, 186 F. Supp. 3d 26 (D. Mass. 2016), is misplaced. Neither of the warrants at issue in those cases was issued under § 2703, or related to obtaining electronically stored communications from a service provider.

The government also argues that the jurisdictional limitations of magistrate judge authority stated in 28 U.S.C. § 636 are inapplicable because § 636 does not address a magistrate judge's authority to issue search warrants. Rather, it addresses the authority to conduct certain procedures not applicable here.

McGuire's argument that the warrant itself "confirms" that Judge Foley lacked jurisdiction because the language in the warrant supposedly authorizes a search of property in the District of Nevada is equally unavailing. At most, McGuire is relying on a typographical error. The government acknowledges that the first page of the search warrant states that the application requested "a search of person or property located in the District of Nevada." However, the warrant specifically authorizes the search for information "stored at premises controlled by Facebook, Inc., a company headquartered in Menlo Park, California." Additionally, the supporting affidavit, which is expressly incorporated in the warrant, makes it clear that the application for the warrant

is made under § 2703 and seeks electronic communications stored electronically by Facebook, Inc., a service provider located in California. Relying on *United States v. Mann*, 389 F.3d 869, 877 (9th Cir. 2002), the government maintains that technical or typographical errors have never served to void a duly authorized warrant.

**C. McGuire's Reply**

The reply reiterates arguments that the face of the search warrant confirms that the government applied for a warrant to search property in the District of Nevada, but conducted a search in California. McGuire disputes that the face of the search warrant contains a typographical or trivial technical error. Rather, McGuire maintains that the government could not lawfully obtain a search warrant from a judge in a completely different jurisdiction from the jurisdiction actually searched. McGuire's reply argues that if the jurisdictional/territorial limitations of Rule 41 apply to § 2703, and the warrant in this case authorized a search in California, then Rule 41 was violated. He also contends that the issue of whether the jurisdictional limitations of Rule 41 apply to § 2703 is "ambiguous" citing *In re Search Warrant*, 362 F. Supp. 2d 1298 (M.D. Fla. 2003), and *In re Yahoo, Inc.*, 2007 WL 1539971, 2007 U.S. Dist. LEXIS 37601 (D. Ariz. May 21, 2007) which reached opposite conclusions. Therefore, the rule of lenity compels a ruling in his favor. The court should suppress all evidence obtained from McGuire's Facebook account and any derivative evidence because ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.

**DISCUSSION**

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347, 350–51 (1967). The Fourth Amendment protects "people, not places." *Id.* at 351. Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484–87 (1963); *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013) ("Searches and seizures that offend the Fourth Amendment are unlawful and evidence obtained as a direct or

indirect result of such invasions is considered 'fruit of the poisonous tree' and is inadmissible under the exclusionary rule.") (citing *Wong Sun*, 371 U.S. at 484–87).

## I. McGuire's Co-Defendants' Standing to Contest a Search

Because Fourth Amendment rights are personal rights, they may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). To challenge the validity of the search warrant, a defendant must show he personally had (i) a property interest protected by the Fourth Amendment that was interfered with, or (ii) a reasonable expectation of privacy that was invaded by the search. *United States v. Lopez-Cruz*, 730 F.3d 803, 807 (9th Cir. 2013) (quoting *United States v. Padilla*, 508 U.S. 77, 82 (1993)). When a person has no ownership interest in the place or thing searched, he must have a reasonable expectation of privacy to claim a violation of his Fourth Amendment rights. *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1187 (9th Cir. 2015).

The Supreme Court has enunciated a two-part test to determine whether an expectation of privacy is reasonable and legitimate. *Katz*, 389 U.S. at 361. First, the individual must have an actual subjective expectation of privacy, and second, society must recognize that expectation as objectively reasonable. *Id.*; *Lopez-Cruz*, 730 F.3d at 807. To say a defendant lacks Fourth Amendment standing is to say that "*his* reasonable expectation of privacy has not been infringed." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 695 (9th Cir. 2009) (citing *United States v. Taketa*, 923 F.2d 665, 669 (9th Cir. 1991)). The defendant bears the burden of establishing, under the totality of the circumstances, that the search violated his legitimate expectation of privacy in the place searched or the things seized. *Rakas*, 439 U.S. at 143; *United States v. Davis*, 332 F.3d 1163, 1167 (9th Cir. 2003).

As an initial matter, the court must determine whether McGuire's co-defendants, Mel Bundy, O'Shaughnessy, Payne, and Ammon Bundy, have standing to join in the substantive arguments presented in the suppression motion. Each filed a motion for joinder (ECF Nos. 817, 818, 828, 834); however, these defendants have no automatic standing to join in McGuire's substantive arguments contesting the legality of the search of *McGuire's* Facebook account. Thus, these defendants must demonstrate Fourth Amendment standing on an individual basis.

The joinders filed by McGuire's co-defendants do not articulate their individual Fourth

Amendment standing to allow joinder in the suppression motion. Payne states that Magistrate Judge Foley issued a warrant authorizing a search of his Facebook account on June 5, 2015. *See* Payne's Joinder Mot. (ECF No. 828). Ammon Bundy states that the Honorable Nancy J. Koppe, United States Magistrate Judge for the District of Nevada, issued a warrant authorizing a search of his Facebook account on November 13, 2015. *See* Ammon Bundy's Joinder Mot. (ECF No. 834). These warrants purportedly authorized Facebook's production of the same information as McGuire's warrant. For the same legal reasons McGuire sets forth in his motion, Payne and Ammon Bundy assert that Judge Foley and Judge Koppe lacked jurisdiction to issue the warrants for their Facebook accounts. They seek to join McGuire's substantive arguments and request an order suppressing all evidence recovered from Facebook and the fruits thereof.

O'Shaughnessy asks to join in McGuire's motion in one conclusory sentence. *See* O'Shaughnessy Joinder Mot. (ECF No. 818). He does not provide any information regarding any warrant pertaining to him. He does not even inform the court whether he had a Facebook account. Mel Bundy submits that he is similarly situated to McGuire because "both are subject to the [*sic*] defend against evidence illegally derived from the warrants issued to obtain information from their respective Facebook accounts." Mel Bundy's Joinder Mot. (ECF No. 817). This statement implies that Mel Bundy had a Facebook account, but it fails to provide any specific information for a warrant pertaining to him.

None of these defendants attached a copy of a warrant issued for their Facebook account. Ammon Bundy and Payne provide cursory descriptions of warrants issued for their accounts and Mel Bundy and O'Shaughnessy provide no description at all. Under the totality of the circumstances, they have not shown Fourth Amendment standing to join McGuire's motion to suppress. Their requests to join in the motion will therefore be denied.

## II. Magistrate Judges Have Authority to Issue § 2703 Search Warrants for Execution Outside of the District in Which They Sit

### A. The Electronic Communications Privacy Act and the Stored Communications Act

The Electronic Communications Privacy Act ("ECPA"), Pub. L. No. 99–508, 100 Stat. 1848 (1986), consists of three parts codified in three places in the United States Code. Title I is

the Wiretap Act, 18 U.S.C. §§ 2510–2522, which proscribes the unauthorized interception of wire, oral, or electronic communications and establishes a judicially supervised procedure to permit such interceptions for law enforcement purposes. Title II of the ECPA is the Stored Wire Electronic Communications Act, 18 U.S.C. §§ 2701–2712, commonly known as the Stored Communications Act or SCA. It establishes privacy protections for stored wire or electronic communications and records and the requirements for law enforcement access. The Stored Communications Act prohibits surreptitious access to communications in electronic storage. *See* 18 U.S.C. § 2701. The Wiretap Act and the Stored Communications Act play complementary roles, the first involving the contemporaneous interception of communications and the second addressing those acquired after storage, even if the storage is transitory and lasts only for a few seconds. *See, e.g.*, *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 449–50 (C.D. Cal. 2007). Title III of the ECPA, 18 U.S.C. §§ 3121–3127, authorizes and provides a procedure for law enforcement to obtain information from the installation and use of pen registers and trap and trace devises. Congress has significantly amended the ECPA in the three decades since its passage, most notably with the USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272 (2001) (the "Patriot Act") and the subsequent legislation reauthorizing parts of the Patriot Act.

Section 2703 of the SCA addresses the circumstances under which electronic communications and remote computing service providers are required to disclose content and non-content related records of wire or electronic communications to law enforcement. 18 U.S.C. § 2703. The statute distinguishes between content and non-content requests as well as recent communications and those in storage for over 180 days. *See*, *e.g.*, Orin S. Kerr, *A User's Guide to the Stored Communications Act*, *and A Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208 (2004). These distinctions determine the showing necessary for law enforcement to obtain compelled disclosure of stored communications. Common examples of content-based communications are emails and instant messages. *See*, *e.g.*, *In re Application of United States for Search Warrant*, 665 F. Supp. 2d 1210, 1213 (D. Or. 2009). The clearest example of a non-content record is the basic subscriber information described in § 2703(c)(2), which primarily involves information about a subscriber's identity. *See* 18 U.S.C. § 2703(c)(2) (name, address, length of

service, types of services utilized, etc.).

Pursuant to § 2703(a), when law enforcement seeks the content of wire or electronic communications that have been in storage less than 180 days, they must use the procedures described in the Federal Rules of Criminal Procedure to obtain a search warrant from a "court of competent jurisdiction." Rule 41(d) states the general procedures for obtaining a search warrant, and requires a showing of probable cause. Communications that have been in electronic storage for more than 180 days may be obtained using one of three methods: (i) search warrant, (ii) subpoena, or (iii) court order authorized in § 2703(d). 18 U.S.C. § 2703(a), (b). Any one of these three methods may be used to compel providers to produce the content of wire or electronic communications in electronic storage over 180 days. *Id.* A court order for disclosure under § 2703(d) may be issued by any court of competent jurisdiction if the government "offers specific and articulable facts showing that there are reasonable grounds to believe that the contents . . . are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). The government may obtain non-content records by subpoena. 18 U.S.C. § 2703(c)(2). Non-content records that may be obtained by subpoena include: name; address; telephone connection records, or session times or durations; length of service and types of service utilized; telephone or instrument number or other subscriber number or identity; and means and source of payment for such service. 18 U.S.C. § 2703(c)(2)(A)–(F).

**B. The Territorial Limitation of Rule 41(b) Does Not Apply to § 2703 Warrants**

Rule 41 governs search and seizure in federal courts and provides for the issuance of search warrants. Rule 41 states that a magistrate judge "has authority to issue a warrant to search for and seize a person or property *located within the district*." Fed. R. Crim. P. 41(b)(1) (emphasis added). However, the rule also states that it "does not modify any statute regulating search or seizure, or the issuance and execution of a search warrant in special circumstances." Fed. R. Crim. P. 41(a)(1).

Section 2703 authorizes any "court of competent jurisdiction" to issue a search warrant using "the procedures described in the Federal Rules of Criminal Procedure." 18 U.S.C. §§ 2703(a), (b), (c). Section 2711 defines the term "court of competent jurisdiction" to include:

> *any district court of the United States* (*including a magistrate judge of such a court*) or any United States court of appeals that--
>
> (i) *has jurisdiction over the offense being investigated*;
>
> (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored . . . .

18 U.S.C. § 2711(3)(A) (emphasis added).

Here, McGuire argues that the territorial limitation of magistrate judge authority in Rule 41(b) renders the search warrant void because Judge Foley authorized the government to search communications in the custody of a service provider located outside of Nevada. The Ninth Circuit has not addressed the interplay between the search warrant process described in Rule 41 and § 2703. However, the Third and Seventh Circuits and several district courts have directly addressed this issue.

Both the Third and Seventh Circuit have held that a magistrate judge has authority to issue search warrants under § 2703, even though such warrants are directed to electronic records held in another district. *United States v. Bansal*, 663 F.3d 634, 662 (3d Cir. 2011); *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). In *Berkos*, the investigating agents applied for and obtained a warrant from a magistrate judge in the Northern District of Illinois, where the investigation was being conducted, compelling a website host in Houston, Texas, to disclose electronic communications records related to the defendant's website. 543 F.3d at 395. The defendant argued on appeal that the magistrate judge in the Northern District of Illinois lacked jurisdiction to issue a warrant ordering the search and production of electronic evidence pursuant to § 2703(a) because the warrant was directed to an out-of-district internet service provider in the Southern District of Texas. *Id*. at 396.[2] He also contended that the § 2703(a) phrase "pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure," violates the

---

[2] Notably, the Seventh Circuit explained that "violations of federal rules do not justify the exclusion of evidence that has been seized on the basis of probable cause and with advance judicial approval." *Berkos*, 543 F.3d at 396 (citation omitted). The court noted that the "remedy of allowing a defendant to go free based on a violation of Rule 41's requirements for obtaining a proper search warrant would be 'wildly out of proportion to the wrong'." *Id*. (citation omitted). This alone merited affirmance of the district court's denial of the suppression motion, but the court addressed the merits of the defendant's argument anyway because the government failed to argue this point.

territorial limitation imposed by Rule 41(b). *Id*. at 397.

Relying on the definition of the word "procedure," the *Berkos* court found that "Rule 41(b) is a substantive provision, not a procedural one." *Id*. The common definition of "procedure" supported its conclusion that "§ 2703(a) incorporates only those provisions of Rule 41 that address the 'specific method' or 'particular way' to issue a warrant." *Id*. at 398. Examining the plain language of the SCA and the rule, the court concluded that Rule 41(b) discusses the circumstances under which a magistrate judge "may issue a warrant, not the procedures to be used for issuing the warrant." *Id*. The warrant procedures are enumerated in a separate subsection,[3] and those procedures applied to § 2703(a). *Id*. The court reasoned that Rule 41 itself states that it does "not modify any statute regarding search or seizure, or the issuance and execution of a search warrant in special circumstances." *Id*. (citing Fed. R. Crim. P. 41(a)(1)). Additionally, the court found that § 2703(a) had its own jurisdictional provision authorizing district courts to issue warrants when it has "jurisdiction over the offense." *Id*. The Seventh Circuit held that Rule 41(b) "deals with substantive judicial authority—not procedure—and thus does not apply to § 2703(a)." *Id*.

In *Bansal*, the Third Circuit also rejected the contention that Rule 41(b) limited a magistrate judge's authority under § 2703 to issue an extraterritorial search warrant. 663 F.3d at 661–62. Five magistrate judges for the Eastern District of Pennsylvania issued warrants to agents of the Drug Enforcement Administration authorizing a search for and production of information believed to be contained in the defendant's Gmail and MSN Hotmail email accounts. *Id*. at 661. On appeal, the defendant contended that the Pennsylvania magistrate judges lacked jurisdiction to issue the warrants because they were ultimately executed upon internet service providers in California. *Id*. at 662. The court recognized that the SCA allowed any "court with jurisdiction over the offense under investigation" to issue a warrant for electronic communications, even if the warrants are ultimately executed in different state or district. *Id*.; 18 U.S.C. § 2711(3)(A). Citing *Berkos*, 543 F.3d at 396–98, the Third Circuit held that Pennsylvania magistrate judges had authority to issue the warrants, even though they were ultimately executed in California. *Id*. Numerous district

---

[3] The *Berkos* decision references Rule 41(e); however, the rule has since been amended and the subsection titled "Obtaining a Warrant" addressing warrant procedures is now found in Rule 41(d).

courts have reached the same conclusion. *See, e.g.*, *United States v. Scully*, 108 F. Supp. 3d 59, 75–84 (E.D.N.Y. 2015) (collecting cases); *Hubbard v. MySpace, Inc.*, 788 F. Supp. 2d 319, 325 (S.D.N.Y. 2011) ("[E]ven though federal magistrate judges typically may issue warrants only for searches within their districts, extraterritorial warrants are permissible for purposes of Section 2703(a)."); *In re Application of United States for Search Warrant*, 665 F. Supp. 2d 1210, 1213 (D. Or. 2009).[4]

The court agrees with the sound analysis and holdings of the Third and Seventh Circuits, and the district courts which have addressed the issue. The plain language of § 2703 allows magistrate judges with jurisdiction over an offense under investigation to issue warrants seeking the production of stored electronic communications from service providers located outside of their own district. Rule 41 specifically provides that it "does not modify any statute or regulating search and seizure, or the issuance and execution of a search warrant in special circumstances." Fed. R. Crim. P. 41(a)(1). The Stored Communications Act is a federal statute authorizing search and seizure of stored wire or electronic communications. It clearly provides for the issuance and execution of a warrant for stored electronic communications using procedures unique to other types of searches and seizures authorized by Rule 41. For example, unlike warrants executed for search and seizure of a person or property under Rule 41(f), a law enforcement officer is not required to be present during the service or execution of a § 2703 search warrant. *See* 18 U.S.C. § 2703(g). The court finds that Judge Foley did not exceed his jurisdictional authority under Rule 41 when he issued the search warrant authorizing a search of McGuire's Facebook account, which

---

4 Many more district courts have concluded the same in unpublished opinions. *See, e.g.*, *United States v. Kanodia*, 2016 WL 3166370, at *3–*4 (D. Mass. June 6, 2016); *United States v. Noyes*, 2010 WL 5139859, at *9 n.8 (W.D. Pa. Dec. 8, 2010) (§ 2703(a) "authorizes courts to issue search warrants for electronic communications and evidence located in other judicial districts in cases where the issuing court has jurisdiction over the offense under investigation."); *United States v. Freeman*, 2010 WL 4386897, at *12 n.6 (D. Minn. May 13, 2010) (holding that "the ECPA authorizes Courts to issue Search Warrants for electronic communications, and evidence, that are located in other Districts, where that Court has jurisdiction over the offense under investigation."), *report and recommendation adopted*, 2010 WL 4386894 (D. Minn. Oct. 28, 2010); *United States v. Kernell*, 2010 WL 1408437, at *3–*4 (E.D. Tenn. Apr. 2, 2010), *report and recommendation adopted*, 2010 WL 1491861 (E.D. Tenn. Apr. 13, 2010); *In re Search of Yahoo, Inc.*, 2007 WL 1539971, at *7 (D. Ariz. May 21, 2007) ("Rule 41(a) expresses Congress' intent that Rule 41(b) does not limit a district court's authority granted in § 2703(a)."); *In re Search Warrant*, 2005 WL 3844032, at *5 (M.D. Fla. Feb. 13, 2006) (holding that "the 'using the procedures' language seems more focused solely on the actual procedural aspects . . . of search warrants").

was directed to Facebook, an electronic communications service provider located in Menlo Park, California. Judge Foley had jurisdiction to issue the warrant pursuant to the provisions of the SCA, using the procedures outlined in Rule 41 because he had jurisdiction over the offenses being investigated. *See* 18 U.S.C. § 2711(3)(A).

The legislative history of the Patriot Act further demonstrates that Congress intended the amendment to § 2703 to allow magistrate judges to issue search warrants for stored electronic communications "that would be valid throughout the United States, rather than only in the district in which they were issued, as is normal under Rule 41(b)." *In re Application of United States*, 665 F. Supp. 2d at 1219 (quoting H.R. Rep. No. 107–236, pt. 1, at 57 (2001)). Prior to 2001, § 2703 required a warrant "issued *under the Rules of Criminal Procedure* or equivalent State warrant." 18 U.S.C. § 2703(a) (1998) (emphasis added). Section 220 of the Patriot Act amended § 2703 by "striking 'under the Federal Rules of Criminal Procedure' every place it appears and inserting '*using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation*'." USA PATRIOT Act of 2001, Pub. L. No. 107–56, 115 Stat. 272 (emphasis added). In October 2009, Congress amended § 2703 into its current form, which provides that a warrant may issue "using the procedures described in the Federal Rules of Criminal Procedure . . . *by a court of competent jurisdiction*." 18 U.S.C. § 2703(a); *Hubbard*, 788 F. Supp. 2d at 321 n.9 (describing the statutory amendment). Congress also amended § 2711(3) to define a "court of competent jurisdiction" to include "*any district court of the United States* (*including a magistrate judge of such a court*)" that "*has jurisdiction over the offense being investigated*." *See Scully*, 108 F. Supp. 3d at 76 (emphasis added).

A House Judiciary Committee's Report explained that the Patriot Act's amendment to § 2703 was meant to decrease unnecessary investigative delays. H.R. Rep. No. 107–236, pt. 1 at 57. In a section of the report titled "Nationwide Service of Search Warrants for Electronic Evidence," the committee states that the amendment to § 2703

> does not affect the requirement for a search warrant, but rather attempts to address the investigative delays caused by the cross-jurisdictional nature of the Internet. Currently, [Rule] 41 requires that the "warrant" be obtained "within the district" where the property is located. An investigator, for example, located in Boston who is investigating a suspected terrorist in that city, might have to seek a suspect's

> electronic e-mail from an Internet service provider (ISP) account located in California. The investigator would then need to coordinate with agents, prosecutors and judges in the district in California where the ISP is located to obtain a warrant to search. These time delays could be devastating to an investigation, especially where additional criminal or terrorist acts are planned.

*Id*. Thus, the amendment authorized the "court with jurisdiction over the investigation to *issue the warrant directly, without requiring the intervention of its counterpart in the district where the ISP is located*." *Id*. Another reason for the amendment was to alleviate the burden placed on federal district courts in the districts where internet service providers are located. *See, e.g.*, *In re Search of Yahoo, Inc.*, 2007 WL 1539971, at *3–*7 (collecting law review articles). The legislative history of the amendments clearly demonstrates Congress' intent to allow magistrate judges to issue § 2703 warrants for execution outside of their own district.

The cases that McGuire cites to support his arguments simply do not apply to warrants issued under § 2703. The magistrate judge who decided *In re Warrant to Search a Target Computer at Premises Unknown*, 958 F. Supp. 2d 753 (S.D. Tex. 2013), noted that the government did not seek a "garden-variety search warrant." *Id*. at 755. Rather, the "novel request" sought a warrant to surreptitiously install data extraction software on a suspect's computer. *Id*. The software would then "search the computer's hard drive, random access memory, and other storage media; to activate the computer's built-in camera; to generate latitude and longitude coordinates for the computer's location; and to transmit the extracted data to FBI agents within this district." *Id*. The proposed warrant did not seek production of wire or electronic communications or records stored with a service provider as defined in the SCA, but instead sought information held on a suspect's computer and permission to capture new video and data that would help locate that computer. Based on the substance of the request, the court applied the constitutional standards for video surveillance under the Wiretap Act, not the Stored Communications Act. *Id*. at 759–60. In fact, the court specifically noted that the government previously "obtained an order under 18 U.S.C. § 2703 directing the Internet service provider to turn over all records related to the counterfeit email account, including the contents of stored communications," but was attempting to acquire completely different information in a subsequent application. *Id*. at 760. The case does not support McGuire's arguments.

McGuire's reliance on *United States v. Levin*, 186 F. Supp. 3d 26 (D. Mass. 2016), and *United States v. Krueger*, 809 F.3d 1109 (10th Cir. 2015) is also misplaced. *Levin* also involved a warrant seeking to deploy data extraction software (*i.e.*, "Network Investigative Technique"). *Id*. at 29. The suppression motion in *Levin* asserted a violation of Rule 41(b)'s substantive requirements, not its procedural requirements. *Id*. at 35 (contrasting *Berkos*, 543 F.3d at 398). In *Krueger*, the government obtained warrants from a magistrate judge in the District of Kansas to search a defendant's homes in both Kansas *and Oklahoma* and seize his computers and cell phones. *Krueger* held that Rule 41 did not authorize the extra-territorial warrant to search real property located in Oklahoma. 809 F 3d at 1114–17. The warrants in *Krueger* and *Levin* were not issued pursuant to § 2703, did not seek electronically stored communications from a service provider, and simply do not support McGuire's arguments.

Only one decision McGuire cites actually involved a § 2703 warrant, *In Re: Search Warrant*, 362 F. Supp. 2d 1298 (M.D. Fla. 2003). There, the magistrate judge found that terrorism was "the thrust of the Patriot Act," and held that the 2001 amendment to § 2703 did not expand the court's "authority to issue out-of-district warrants for every conceivable non-terrorism crime in the prosecutors' arsenal." *Id*. at 1303. However, this decision was reversed on appeal to the district judge. *In re Search Warrant*, 2005 WL 3844032 (M.D. Fla. Feb. 13, 2006). The district judge held that "out-of-district warrants may be issued in non-terrorism-related investigations under Section 2703 as amended by Section 220 of the Patriot Act, and that the issuance of such warrants is not restricted by the language of Rule 41(b)." *Id*. at *6.

The 2016 Amendments to Rule 41(b)(6), effective December 1, 2016, also do not support McGuire's arguments. The Advisory Committee notes indicate this amendment "provides that in two specific instances a magistrate judge in a district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and seize or copy electronically stored information even when that media or information is or may be located outside of the district." Fed. R. Crim. P. 41, Advisory Comm. Notes, 2016 Amendments, Subdivision (b)(6). Rule 41(b)(6)(A) "provides authority to issue a warrant to use remote access within or outside the district when the district in which the media or information is

located is not known because of the use of technology such as anonymizing software." *Id*. Rule 41(b)(6)(B) was amended to allow "a warrant to use remote access within or without the district in an investigation of a violation of 18 U.S.C. § 1030(a)(5) if the media to be searched are protected computers that have been damaged without authorization, and they are located in many districts." *Id*. The new provisions of Rule 41 do not apply to McGuire's warrant, or support his arguments.

**C. 28 U.S.C. § 636 Does Not Restrict a Magistrate Judge's Authority to Issue an Out-of-District Warrant Under 18 U.S.C. § 2703**

Section 636 addresses the jurisdiction and powers of magistrate judges. The statute provides that magistrate judges shall exercise their powers "*within the district* in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, *and elsewhere as authorized by law*." 28 U.S.C. § 636(a) (emphasis added).

McGuire contends that the territorial limitation stated in § 636(a) renders the warrant issued by Judge Foley void. This argument also lacks merit. It is undisputed that Judge Foley issued the warrant in Las Vegas, Nevada, to obtain evidence of offenses under investigation in this district. *See* Sealed Exhibit (ECF No. 707) at 2 (search warrant issued on June 5, 2015, at 3:00 P.M., in Las Vegas, Nevada). Thus, Judge Foley exercised his powers *within* the District of Nevada. McGuire argues that the government should have sought a warrant from a magistrate judge in the Northern District of California. Section 636(a) directs that magistrate judges may exercise their powers as "authorized by law." The Stored Communications Act gives magistrate judges with jurisdiction over the offenses under investigation in their district the authority to issue search warrants for wire or electronic communications and records stored outside the district. Judge Foley did not exceed his authority under § 636(a).

**D. A Single Misstatement of the Location of the Stored Communications Does Not Render the Warrant Void**

The Fourth Amendment requires that a warrant particularly describe the place to be searched. U.S. Const. amend. IV. The test for determining the validity of a warrant is: (i) "whether the warrant describes the place to be searched with sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort," and (ii) "whether

any reasonable probability exists that the officers may mistakenly search another premise." *United States v. Brobst*, 558 F.3d 982, 992 (9th Cir. 2009). When examining a warrant's description, it "is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925); *United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir. 2015) ("The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized.") (quotation omitted). A warrant that includes a technical misstatement or clerical error will still meet the Fourth Amendment's particularity requirement when the circumstances show there is "virtually no chance that the executing officer would have any trouble locating and identifying the premises to be searched, or that he would mistakenly search another house." *United States v. Turner*, 770 F.2d 1508, 1511 (9th Cir. 1985) (citation omitted); *see also Brobst*, 558 F.3d 991–92; *United States v. Mann*, 389 F.3d 869, 876 (9th Cir. 2004).

Here, McGuire argues that the court must suppress the evidence produced by Facebook because the face of the warrant states that the property to be searched and seized was located in the District of Nevada. *See* Sealed Exhibit (ECF No. 707) at 2. The government used the standard form of search warrant provided by the Administrative Office of the court, AO 93 (Rev. 12/09), and incorrectly filled in the blank that the person or property subject to the search was located in the District of Nevada. This is clearly a clerical error. The warrant describes the location of the property to be searched in "Attachment A," which states that the warrant "applies to information associated with FACEBOOK user ID '1578889507' associated with MICAH MCGUIRE that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., *a company headquartered in Menlo Park, California*." *Id*. at 4 (emphasis added). Additionally, the search warrant application and agent's affidavit, which were expressly incorporated into the warrant, made it clear that the warrant sought "the Facebook Account of Micah McGuire, Facebook User ID 1578889507, (uniform resource locator ("URL") www.facebook.com//artisticmc) (hereinafter also referred to as the "Online Account to Be Searched") that is stored at a premises controlled by Facebook, Inc., a company headquartered in *Menlo Park, California*." *Id*. at 21 (emphasis added); *see also id*. at 29 (repeating that Facebook is headquartered in Menlo Park, California). Read

together and incorporated by reference, Attachment A and the affidavit supporting the application insured there was no chance that an officer would have trouble locating the premises to be searched. McGuire's warrant was sufficiently particular, and the technical misstatement on the face of the warrant does not merit suppression.

**E. The Rule of Lenity Does Not Apply**

The Supreme Court has held that the "touchstone of the rule of lenity is statutory ambiguity." *Abbott v. United States*, 562 U.S. 8, 28 n.9 (2010) (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980)). The rule of lenity is a long-standing principle that leads courts to construe ambiguous criminal statutes narrowly and to resolve all ambiguities in a defendant's favor. *United States v. Bass*, 404 U.S. 336, 348 (1971); *see also United States v. Santos*, 553 U.S. 507, 514 (2008), *superseded by statute on other grounds as stated in United States v. Elder*, 682 F.3d 1065, 1072 n.3 (8th Cir. 2012). The Supreme Court has explained that if a court must choose "between two readings of what conduct Congress has made a crime," the rule of lenity requires Congress to define the proscribed conduct in clear and definite language before the court will choose the harsher alternative. *Jones v. United States*, 529 U.S. 848, 858 (2000) (citation omitted). By applying the rule of lenity, the courts avoid "making criminal law in Congress's stead." *Santos*, 553 U.S. at 517. The rule of lenity embodies "the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain," and therefore ensures that individuals are on notice when they act. *Id*. at 514.

McGuire argues that the court should suppress all evidence obtained from his Facebook account and any derivative evidence because § 2703 is ambiguous about whether magistrate judges have authority to issue out-of-district search warrants. However, the rule of lenity applies to ambiguous criminal statutes under which a defendant is *charged*, that is, "conduct Congress has made a crime." It has no application to the determination of whether magistrate judges have jurisdiction to issue out-of-district search warrants pursuant to § 2703.

/ / /

/ / /

/ / /

For the reasons explained,

**IT IS ORDERED** that: Defendants Mel Bundy, Ryan Payne, Ammon Bundy. and Joseph D. O'Shaughnessy's Motions for Joinder (ECF Nos. 817, 818, 828, 834) are **DENIED**.

**IT IS RECOMMENDED** that McGuire's Motion to Suppress all Evidence Recovered from his Facebook Account and Fruits Derived Therefrom (ECF No. 706) be **DENIED**.

DATED this 9th day of February, 2017.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE