# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> RYAN W. PAYNE, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 2:16-cr-046-GMN-PAL <br><br> **ORDER** |

Pending before the Court is Defendant Ryan W. Payne's ("Payne's") Objection (ECF No. 1224) to Magistrate Judge Peggy A. Leen's Order (ECF No. 1171) denying Payne's Motion to Change Venue (ECF No. 750).[1] The Government filed a Response (ECF No. 1322).

Also pending before the Court is Payne's related Motion for the Court to Issue Summons to the Jurors from the Entire District of Nevada. (ECF No. 1355).[2] The Government filed a Response (ECF No. 1494), and Payne filed a Reply (ECF No. 1551).

## I.  BACKGROUND

On March 2, 2016, a federal grand jury sitting in the District of Nevada returned a Superseding Indictment charging nineteen defendants with numerous counts related to a confrontation on April 12, 2014, with Bureau of Land Management ("BLM") Officers in Bunkerville, Nevada. (ECF No. 27). On December 12, 2016, Judge Leen entered an Order

---

[1] On January 13, 2017, Defendant Ammon Bundy ("A. Bundy") filed a Motion for Joinder (ECF No. 1294) to Payne's Objection (ECF No. 1224). Additionally, on January 17, 2017, Melvin Bundy ("M. Bundy") also filed a Motion for Joinder (ECF No. 1321) to Payne's Objection (ECF No. 1224). Pursuant to District of Nevada Local Rule IB 3-1(a), any objections to a magistrate judge's order must be filed within 14 days of service. Judge Leen's Order was filed on December 20, 2016. (ECF No. 1171). A. Bundy and M. Bundy's Motions were not filed within the 14-day deadline to be considered as objections to Judge Leen's Order. Accordingly, A. Bundy and M. Bundy's Motions for Joinder (ECF Nos. 1294, 1321) are denied as untimely.

[2] Steven Stewart, M. Bundy, and A. Bundy filed Motions for Joinder (ECF Nos. 1360, 1412, 1710) to Payne's Motion for the Court to Issue Summons to the Jurors from the Entire District of Nevada (ECF No. 1355). For good cause appearing, the Court grants these Motions for Joinder.

(ECF No. 1098) severing the nineteen defendants in this case into three tiers and informing the parties that each trial will commence thirty days after the conclusion of the previous trial.

On February 6, 2017, the first trial began with the six defendants constituting tier three: defendants Richard Lovelien ("Lovelien"), Todd Engel ("Engel"), Gregory Burleson ("Burleson"), Eric Parker ("Parker"), O. Scott Drexler ("Drexler"), and Steven Stewart ("Stewart"). (ECF No. 1528). On April 24, 2017, the jury rendered a partial verdict, finding Burleson guilty as to Counts 5, 6, 8, 9, 12, 14, 15, and 16, and Engel guilty as to Counts 12 and 16. (ECF No. 1887). However, the jury deadlocked on the remaining counts for these two defendants and all counts as to the other four defendants. (*Id.*). Subsequently, the Court made a finding of manifest necessity and declared a mistrial on all deadlocked counts. (*Id.*). The Court dismissed the remaining counts against Burleson and Engel upon the Government's motions (ECF Nos. 1998, 2012), and the remaining tier three defendants are set to begin retrial on July 10, 2017 (*see* ECF No. 2053). Payne is a tier one defendant, set for trial thirty days following the retrial of the tier three defendants. (*See* ECF No. 1975).

## II. <u>LEGAL STANDARD</u>

When reviewing the order of a magistrate judge, a district judge should only set aside the order if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); D. Nev. R. IB 3-1(a). A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed." *See Burdick v. Comm'r IRS*, 979 F.2d 1369, 1370 (9th Cir. 1992). When reviewing the order, however, the magistrate judge "is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (citation omitted). The district judge "may not simply substitute its judgment" for that of the magistrate judge. *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

## III. DISCUSSION

### A. Objection (ECF No. 1224)

Payne originally sought to transfer venue because of alleged "inflammatory and prejudicial local media coverage." (Mot. Transfer Venue 5:2, ECF No. 750). In the alternative, Payne sought to conduct the jury trial in Reno or "at least pick the jury from the northern Nevada jury pool," reasoning that pretrial publicity has been less pervasive in Reno. (*Id.* 13:12–13). Payne's motion argued that presumed prejudice existed, requiring the preemptive transfer of venue, but he also requested leave to renew his motion to transfer venue during *voir dire* should he be able to demonstrate actual prejudice. (*Id.* 13:6–11). Examining the presumed prejudice factors set forth by the U.S. Supreme Court in *United States v. Skilling*, 561 U.S. 358, 382–83 (2010), Judge Leen found that "Payne has not met his burden of showing that this is such an extreme case that [the court] must presume prejudice based on prejudicial pretrial publicity." (Order on Mot. Transfer Venue 11:26–15:9, ECF No. 1171).

Payne now raises four objections to Judge Leen's Order. First, he asserts that Judge Leen erred by not addressing his alternative requests to "hold the trial in Reno or to choose the jury from Reno." (Obj. 6:18–19, ECF No. 1224). Second, he contends that Judge Leen erred by "downplay[ing] the significance of the prejudicial connections the media and political campaigns established between the June 2014 shootings of two Las Vegas police officers and the Bunkerville protest." (*Id.* 8:14–16). Third, Payne objects to Judge Leen's "sua sponte" reliance on the District of Nevada's Jury Selection Plan pursuant to 18 U.S.C. 1863(a) regarding the size and characteristics of the community, along with her determination that this factor weighs against presuming prejudice. (*See id.* 10:18–13:2). Finally, Payne argues that Judge Leen erred by "equat[ing] the media coverage in the Las Vegas area to that which purportedly occurred nationwide" and finding that the "prejudicial media coverage in Las Vegas has diminished." (*Id.* 13:3–5).

As to Payne's first objection, the Court finds that Judge Leen did, in fact, consider Payne's alternative requests regarding Reno. Specifically, Judge Leen's Order stated:

> Payne'e [sic] motion asks the court to find a presumption of prejudice requires a transfer of venue from the unofficial southern division of the District of Nevada to another federal district within the Ninth Circuit or to the unofficial northern division in Reno, or alternatively, that the court select a jury from the northern division jury pool. The court must therefore apply the *Skilling* factors.

(Order Mot. Transfer Venue 11:20–24). As such, it is clear that Judge Leen considered Payne's suggested Reno alternatives. However, transfer of venue need only be considered upon a showing of presumed or actual[3] prejudice. *Ainsworth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998). Upon finding that the *Skilling* factors did not weigh in favor of a presumption of prejudice, Judge Leen found that no remedy—transfer to another federal district court or Reno, or choosing the jury from Reno—was necessary because no presumed prejudice existed. Accordingly, the Court overrules Payne's first objection.

The Court will examine Payne's second and fourth objections together, as they both relate to Judge Leen's analysis and examination of the media coverage. The Court finds that Judge Leen did not err in finding this coverage was not "so pervasive and inflammatory" to create a presumption of prejudice. *See United States v. Croft*, 124 F.3d 1109, 1115 (9th Cir. 1997) ("Prejudice is presumed when the adverse publicity is so pervasive and inflammatory that the jurors cannot be believed when they assert that they can be impartial."). The Court finds that its juror screening methods are sufficient to examine the potential biases of the venire. For example, in the first trial, the Court extensively questioned each potential juror regarding the pretrial publicity and allowed for individual follow-up by the attorneys regarding any possible for-cause excusal. Additionally, the potential jurors were all asked about their

---

[3] The Court cannot examine actual prejudice at this time because *voir dire* for Payne has not yet commenced. *See Hayes v. Ayers*, 632 F.3d 500, 508 (9th Cir. 2011). ("Actual prejudice . . . exists when voir dire reveals that the jury pool harbors actual partiality or hostility [against the defendant] that [cannot] be laid aside.") (internal quotation marks omitted) (modification in original).

exposure to any campaign literature or political advertisements that mentioned or depicted tier one co-defendant Cliven Bundy. In the first trial, the Court was easily able to seat a 12-member jury, along with 4 alternates, after only two days of *voir dire*. (*See* ECF No. 1552). The final *Skilling* factor is whether the whether the jury's verdict undermines "the supposition of juror bias." *Skilling*, 561 U.S. at 383. Judge Leen's Order, filed on December 20, 2016, did not have the benefit of the first trial's jury verdict; however, this Court can now clearly show, based on the hung jury on most counts of the first trial, that no juror bias against the defendants existed. (*See* ECF No. 1887). Similar to *Skilling*, here the first trial "yielded no overwhelming victory for the Government." 561 U.S. at 383. As the Supreme Court has noted: "It would be odd . . . to presume prejudice in a case in which jurors' actions run counter to that presumption." *Id.*

Further, Payne argues that "the Las Vegas jury pool has been bombarded with not only an incredible amount of news coverage, but coverage that was prejudicial and inflammatory, and that prejudicial coverage has continued until the present." (Obj. 13:18–20). The Court disagrees. The continuing media coverage, especially since the beginning of the first trial in early 2017, has been either objective reporting of the first trial or predominantly favorable to the defendants.[4] Ultimately, the Court finds no clear error in Judge Leen's factual findings and overrules Payne's second and fourth objections.

Lastly, regarding Payne's third objection, the Court finds that Judge Leen properly took judicial notice of the "2010 national census information is used to compile the court's Report on Operation of the Jury Selection Plan pursuant to 18 U.S.C. Section 1863(a)." (Order Mot. Transfer Venue 12:3–4); *see* Fed. R. Evid. 201. The Court also finds that Judge Leen did not

---

[4] Additionally, Payne is correct regarding the irrelevance of the 2014 police shooting, and the Court precluded any evidence of it. (*See* ECF No. 1543). As such, to the Court's knowledge, since the beginning of 2017, there has been no media coverage of this separate incident in connection to this case because no references were allowed during the first trial.

clearly err in finding that the Las Vegas division's population size and characteristics weighed against the presumption of prejudice. Payne argues that in *Skilling*, the population was 4.5 million eligible for jury duty, but here, in the Las Vegas division, there are only 1.2 million eligible individuals. (Obj. 12:3–14). However, this argument lacks merit because in *Skilling*, the Supreme Court actually used Clark County's population in 1988 of 600,000 individuals as an example of a population large enough to reduce the likelihood of prejudice. *Skilling*, 561 U.S. at 382 (citing *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1044 (1991) (plurality opinion) as an example of where the Supreme Court previously found a large, diverse pool of potential jurors). Now, as the number of eligible jurors in the Las Vegas division is double that of 1988, this factor clearly weighs against a presumption of prejudice, and the Court overrules this objection.

Accordingly, the Court finds that Judge Leen did not clearly err in denying Payne's Motion to Transfer Venue and overrules Payne's Objection.

**B. Motion to Summon Jurors from the Entire District of Nevada (ECF No. 1355)**

Payne's more recent Motion to Summon Jurors from the Entire District of Nevada similarly argues that to achieve a "trial before a fair cross section of the community" requires drawing jurors from the entire District of Nevada. (Mot. Summon Jurors 3:1–3, ECF No. 1355).[5] While Payne acknowledges that a "jury may be drawn constitutionally from only one division and not the whole district," he nonetheless urges the Court to find that the "unique circumstances" of this case and "fundamental fairness" necessitate summoning jurors from the whole district here. (*Id.* 3:13–22). The underlying reasons for this request are the same as Payne's Objection, specifically the "media coverage in the Las Vegas division." (*Id.* 4:23–5:1).

---

[5] The Court finds that both Payne's Objection regarding venue and this Motion are related because, as Payne states in his Motion, "The question of whether to issue summonses to jurors in the entire district is inextricably linked to the question of venue." (Mot. Summon Jurors 4:14–15).

Additionally, Payne argues that examining voter registration by political party, in a politically-charged case such as this one, also supports drawing jurors from the entire state. (*Id.* 5:8–6:19).

For the same reasons explained above for overruling Payne's Objection, the Court similarly denies Payne's Motion to Summon Jurors from the Entire District of Nevada. As Payne concedes, such a decision is well within the discretion of the Court. See *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) ("A defendant is not entitled to a jury of any particular composition."). The Court declines to find that the facts of this case present a presumption of prejudice. (*See supra* Part III.A.). The Court will provide for extensive screening of the prospective jurors, both through a screening questionnaire and follow-up *voir dire*. As demonstrated through the first trial in this case, such a method resulted in seating a jury after only two days of *voir dire*. (*See* ECF No. 1552). Additionally, the jurors in the first trial, all summoned from the Las Vegas division, clearly did not demonstrate a bias against the defendants, as shown by their deadlock on most counts. *See Skilling*, 561 U.S. at 383. Accordingly, the Court declines to take the further remedial actions requested by Payne.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Payne's Objection (ECF No. 1224) is **OVERRULED**.

**IT IS FURTHER ORDERED** that Payne's Motion for the Court to Issue Summons to the Jurors from the Entire District of Nevada (ECF No. 1355) is **DENIED**.

**IT IS FURTHER ORDERED** that A. Bundy and M. Bundy's Motions for Joinder (ECF Nos. 1294, 1321) are **DENIED**.

**IT IS FURTHER ORDERED** that Steven Stewart, M. Bundy, and A. Bundy's Motions for Joinder (ECF Nos. 1360, 1412, 1710) are **GRANTED**.

**DATED** this __10__ day of June, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court