1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

UNITED STATES OF AMERICA,

Case No. 2:16-cr-00046-GMN-PAL

8

Plaintiff,

**ORDER**

v.

9
10

CLIVEN BUNDY et. al,

(Emrg. Mot. Release– ECF No. 2066)
(Mot. Reopen Det. – ECF No. 2069)
(Mot. for Ruling – ECF No. 2303)

Defendants.

11

12    This matter is before the court on a joint Emergency Motion to Release Defendants on Due

13  Process Grounds (ECF No. 2066) filed by Ryan Payne, Cliven Bundy, Ammon Bundy, Peter

14  Santilli, Mel Bundy, Dave Bundy, Brian Cavalier, Joseph O'Shaughnessy, and Jason Woods.

15  Defendant Ryan Payne subsequently filed a Motion for Ruling (ECF No. 2303) on the joint motion

16  for release.  Defendants Cliven Bundy, Peter Santilli, Ammon Bundy, Brian Cavalier, Dave

17  Bundy, Mel Bundy, and Jason Woods filed Motions for Joinder (ECF Nos. 2307, 2310, 2311,

18  2315, 2316, 2327, 2334) to Payne's request for expedited treatment.  The court has considered the

19  motions, the Government's Response (ECF No. 2107), and the moving defendants' Reply (ECF

20  No. 2134).

21    Defendant Ryan Bundy filed a Motion Joinder (ECF No 2093) to the joint motion for

22  release as well as a separate Motion to Reopen Detention or Alternatively, Grant Pretrial Release

23  based on Due Process Violation (ECF No. 2069).  Magistrate Judge George W. Foley decided the

24  motion to reopen, deferring the substantive due process arguments to the undersigned. *See* Order

25  (ECF No. 2182).

26    These motions are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and

27  LR IB 1-3 of the Local Rules of Practice.

28  / / /

1

# BACKGROUND

## I. THE INDICTMENT

Nineteen defendants are charged in a 16-count Superseding Indictment (ECF No. 27) returned March 2, 2016. The superseding indictment in this case arises out of a series of events related to a Bureau of Land Management ("BLM") impoundment of Cliven Bundy's cattle following a two-decade-long battle with the federal government. Beginning in 1993, Cliven Bundy continued to graze cattle on land commonly referred to as the "Bunkerville Allotment" without paying required grazing fees or obtaining required permits. The United States initiated civil litigation against Cliven Bundy in 1998 in the United States District Court for the District of Nevada. The court found that Cliven Bundy had engaged in unauthorized and unlawful grazing of his livestock on property owned by the United States and administered by the Department of the Interior through the BLM. The court permanently enjoined Cliven Bundy from grazing his livestock on the Allotment, ordered him to remove them, and authorized the BLM to impound any unauthorized cattle. Bundy did not remove his cattle or comply with the court's order and injunction. The United States went back to court. Subsequent orders were entered in 1999 and 2013 by different judges in this district permanently enjoining Bundy from trespassing on the Allotment and land administered by the National Park Service ("NPS") in the Lake Mead National Recreation Area,[1] ordering Bundy to remove his cattle, and explicitly authorizing the United States to seize, remove, and impound any of Bundy's cattle for future trespasses, provided that written notice was given to Bundy.

On February 17, 2014, the BLM entered into a contract with a civilian contractor in Utah to round up and gather Bundy's trespass cattle. BLM developed an impoundment plan to establish a base of operations on public lands near Bunkerville, Nevada, about seven miles from the Bundy ranch in an area commonly referred to as the Toquop Wash. On March 20, 2014, BLM also entered into a contract with an auctioneer in Utah who was to sell impounded cattle at a public sale. Bundy was formally notified that impoundment operations would take place on March 14, 2014. The

---

[1] By 2012, Bundy's cattle had multiplied and he also began grazing his cattle on land administered by the NPS in the Lake Mead National Recreation Area without obtaining grazing permits or paying grazing fees.

following day, Bundy allegedly threatened to interfere with the impoundment operation by stating publicly that he was "ready to do battle" with the BLM, and would "do whatever it takes" to protect "his property." The Superseding Indictment alleges that after being notified that BLM intended to impound his cattle, Bundy began to threaten to interfere with the impoundment operation, and made public statements he intended to organize people to come to Nevada in a "range war" with BLM and would do whatever it took to protect his cattle and property.

The Superseding Indictment alleges that, beginning in March 2014, the 19 defendants charged in this case planned, organized, conspired, led and/or participated as followers and gunmen in a massive armed assault against federal law enforcement officers to threaten, intimidate, and extort the officers into abandoning approximately 400 head of cattle owned by Cliven Bundy. The removal and impoundment operation began on April 5, 2014. On April 12, 2014, defendants and hundreds of recruited "followers" executed a plan to recover the cattle by force, threats, and intimidation. Defendants and their followers demanded that officers leave and abandon the cattle and threatened to use force if the officers did not do so. The Superseding Indictment alleges armed gunmen took sniper positions behind concrete barriers and aimed their assault rifles at the officers. Defendants and their followers outnumbered the officers by more than 4 to 1, and the potential firefight posed a threat to the lives of the officers, as well as unarmed bystanders which included children. Thus, the officers were forced to leave and abandon the impounded cattle.

After the April 2014 confrontation with federal officers, the superseding indictment alleges that the leaders and organizers of the conspiracy organized armed security patrols and check points in and around Cliven Bundy's Bunkerville ranch to deter and prevent any future law enforcement actions against Bundy or his co-conspirators, and to protect Bundy's cattle from future law enforcement actions.

## II.    PROCEDURAL HISTORY

Cliven Bundy was initially arrested on February 11, 2016, in the District of Oregon on a criminal Complaint (ECF No. 1) and warrant issued in this district. An Indictment (ECF No. 5) was returned February 17, 2016, charging Bundy and co-defendants Ryan Bundy, Ammon Bundy, Ryan Payne, and Peter Santilli with 16 felony counts. A Superseding Indictment (ECF No. 27)

naming additional defendants was returned March 2, 2016. All 19 defendants made their appearances in this case in this district between March 4 and April 15, 2016. At the initial appearance of each defendant, the government stated its position that this was a complex case that would require special scheduling review. All 19 defendants were detained pending trial.

In an Order (ECF No. 198) entered March 25, 2016, the court directed the parties to meet and confer as required by LCR 16-1 to discuss whether this case should be designated as complex, and, if so, to attempt to arrive at an agreed-upon complex scheduling order addressing five specified topics for discussion. The order gave the parties until April 18, 2016, to file a stipulated proposed complex case schedule if all parties were able to agree, or if they were not, to file a proposed schedule with supporting points and authorities stating each party's position with respect to whether or not the case should be designated as complex, a proposed schedule for discovery, pretrial motions, and trial, and any exclusions of time deemed appropriate under the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161–3174.

A Proposed Complex Case Schedule (ECF No. 270) was filed on April 18, 2016. In it, the government and 13 of the 19 defendants agreed that the case should be designated as complex. The 13 defendants who stipulated to the proposed schedule included: Cliven Bundy, Mel Bundy, Dave Bundy, Blaine Cooper, Gerald Delemus, O. Scott Drexler, Richard Lovelien, Steven Stewart, Todd Engel, Gregory Burleson, Joseph O'Shaughnessy, Micah McGuire and Jason Woods. *Id*. at 2. Three defendants, Ammon Bundy, Peter Santilli, and Brian Cavalier, indicated that they would "defer the decision to agree or disagree, pending further consultation with counsel and/or have taken no position as to the filing of this pleading." *Id*. at 3. Three defendants, Ryan Bundy, Eric Parker, and Ryan Payne, disagreed that the case should be designated as a complex case "to the extent time is excluded under the STA." *Id*.

The same 13 defendants who stipulated that the case should be designated as complex, agreed that the May 2, 2016 trial date should be vacated, and the trial in this matter should be set on the first available trial stack beginning in or around February 2017. *Id*. at 8. Three defendants, Ammon Bundy, Peter Santilli, and Brian Cavalier, "deferred the decision to agree or disagree about a trial date pending further consultation with counsel, or have not taken a position." *Id*.

The same 13 defendants who stipulated the case should be designated as complex and a trial date set in February 2017, also stipulated "that all time from the entry of Defendants' pleas in this case until the trial of this matter is excluded for purposes of the STA pursuant to 18 U.S.C. § 3161(h)(7)(A) as the ends of justice outweigh the interest of the public and the defendants in a speedy trial." *Id*. at 9. Ammon Bundy, Peter Santilli and Brian Cavalier "deferred the decision to agree or disagree about the exclusion of time, pending further consultation with counsel, or have taken no position on the matter." *Id*. at 9–10. Ryan Bundy stated he disagreed "to the extent any exclusion of time denies him the right to a speedy trial under the STA." *Id*. at 10. Eric Parker stated he disagreed "with no further position stated." *Id*. Ryan Payne stated he disagreed "with the exclusion of time to the extent it denies him the right to a speedy trial under the STA." *Id*.

The court held a scheduling and case management conference on April 22, 2016, to determine whether this case should be designated as complex. Mins. of Proceedings (ECF No. 327). Eighteen of the 19 defendants appeared with their counsel. Defendant Ryan Bundy appeared pro se with standby counsel, Angela Dows. At the scheduling and case management conference, many of the defendants who had initially stipulated to the complex case schedule and a February 2017 trial date, changed positions. The positions of each of the defendants were stated on the record at the hearing and memorialized in the court's Case Management Order (ECF No. 321) entered April 26, 2016. The court found the case was a complex case within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii), and set the trial for February 6, 2017. The Case Management Order made findings concerning why this case was deemed complex within the meaning of 18 U.S.C. § 3161(h)(7)(B), and findings on exclusion of time for purposes of the STA. The Case Management Order also set deadlines for filing motions to sever, motions for filing pretrial motions and notices required by Rule 12 of the Federal Rules of Criminal Procedure and LCR 12(1)(b). Only Defendant Brian D. Cavalier filed objections (ECF No. 314) to the Case Management Order asking the district judge to review those findings, the complex case designation, and the trial date. The central argument of the objections stemmed from Cavalier's perceived violation of his speedy trial rights. Chief United States District Judge Gloria M. Navarro overruled the objections finding that several of the STA's enumerated exclusion periods applied.

1    June 13, 2016 Order (ECF No. 523) at 4–7.

2          Two of the 19 defendants charged in the superseding indictment in this case, Blaine Cooper

3    and Gerald Delemus, entered into plea agreements.  The remaining defendants filed motions to

4    sever advancing a variety of different proposals from individual trials to proposed groupings of

5    defendants for trial.  The government opposed the defendants' motions to sever arguing the

6    defendants were properly joined for trial, and that a joint trial is particularly appropriate in a

7    conspiracy case.  The court denied the defendants' motions to sever.  Dec. 12–13, 2016 Orders

8    (ECF Nos. 1098, 1100–06, 1108–13).

9          In October 2016, the defendants who were also charged in the Oregon prosecution, Ammon

10   Bundy, Ryan Bundy, Ryan Payne, Brian Cavalier, Joseph O'Shaughnessy, and Blaine Cooper

11   were acquitted.  The government dismissed charges against Peter Santilli in the Oregon indictment

12   shortly before trial in that case.  When it became apparent that the defendants who had not already

13   entered into plea agreements intended to proceed to trial in this district, the government filed what

14   it called a "supplement" (ECF No. 971) on November 13, 2016, asking that the court sever this

15   case into three groups for trial in the interest of judicial economy.  The government argued a joint

16   trial with 17 defendants would unreasonably increase the total amount of trial time, result in greater

17   delay, confusion and make it difficult to maintain an orderly and efficient proceeding.  After setting

18   a briefing schedule for the defendants to respond to the government's proposal, the court granted

19   the government's request to sever the case into three groups for trial, but did not grant the

20   government's suggested order of those three trials.  *See* Orders (ECF Nos. 1098, 1100–06, 1108–

21   13).  The orders provided that the first group of six defendants (the Tier 3 defendants) would

22   proceed to trial February 6, 2017, with the second group (the Tier 1 defendants) to proceed to trial

23   30 days after conclusion of the first trial, and the third group (the Tier 2 defendants) to proceed to

24   trial 30 days after conclusion of the second trial.

25         The first trial of the six defendants in Tier 3 went forward on February 6, 2017, and

26   concluded on April 24, 2017, when the jury returned a partial verdict convicting only defendants

27   Engle and Burleson of some of the counts.  Mins. of Proceedings (ECF No. 1887).  As a result,

28   Judge Navarro declared a mistrial on all deadlocked counts.  *Id*.  The district judge reset the trial

6

of the other four defendants for whom the jury did not reach a verdict for June 26, 2017, within 70 days of declaring the mistrial pursuant to 18 U.S.C. § 3161(e). May 17, 2017 Order (ECF No. 1975). On May 25, 2017, at calendar call, the four remaining Tier 3 defendants orally moved to continue the trial from June 26, 2017, to July 10, 2017. Mins. of Proceedings (ECF No. 2012). The government objected. *Id.* The parties subsequently stipulated to the continuance and that the time was excludable under 18 U.S.C. § 3161(h)(7)(A) when considering the factors under 18 U.S.C. §§ 3161(h)(7)(b)(i) and 3161(h)(7)(b)(iv). June 10, 2017 Order (ECF No. 2053) (granting Stipulation (ECF No. 2020)); June 15, 2017 Order Regarding Trial (ECF No. 2061).

The second trial of the four remaining Tier 3 defendants began July 10, 2017, and ended August 22, 2017, when the jury returned a partial verdict acquitting defendants Lovelien and Stewart, and finding defendants Parker and Drexler not guilty of certain counts. Mins. of Proceedings (ECF No. 2283). The jury was unable to reach a verdict on the remaining counts as to Parker and Drexler and the district judge declared a mistrial as to those counts. *Id.* The following day, the district judge released Parker and Drexler on Pretrial Services supervision on various conditions. Aug. 23, 2017 Mins. of Proceedings (ECF Nos. 2295, 2297). The government indicated it intended to retry Parker and Drexler and could be ready as soon as the court could be ready. The district judge set their retrial for September 25, 2017. She set a status hearing for August 31, 2017, to determine whether Parker and Drexler wished to waive their speedy trial rights to enable the next group to proceed to trial on September 25, 2017, before their retrial. *Id.*

At a lengthy hearing on August 31, 2017, counsel for Parker and Drexler announced they wished to proceed to trial, and were unwilling to waive their rights under the STA. Mins. of Proceedings (ECF No. 2331). Counsel for Parker initially told the court that he would ask for a brief stay to address Parker's interlocutory appeal to the Ninth Circuit. *See* Notice of Appeal (ECF No. 2320). Counsel for Drexler opposed any stay, and counsel for Parker then announced that Parker would withdraw his interlocutory appeal. The district judge inquired whether the Tier 1 defendants, Cliven Bundy, Ammon Bundy, Ryan Bundy, Ryan Payne and Peter Santilli could be prepared for trial September 25, 2017. She also inquired whether Parker or Drexler opposed being joined for trial with the Tier 1 defendants. Counsel for Payne stated a September 25, 2017 trial

date was "problematic" because the jury consultant his office retained was not available until October 9, 2017. Parker and Drexler agreed to be tried with the Tier 1 defendants in the interests of proceeding to trial as soon as possible. After hearing from all parties, the district judge set the Tier 1 defendants and Parker and Drexler for trial on October 10, 2017, as October 9 is a federal holiday.

## III.  THE PARTIES' POSITIONS

### A.  Defendants' Motion for Release on Due Process Grounds (ECF No. 2066)

Defendants' motion argues that extraordinary circumstances in this case mandate relief under the Due Process Clause and speedy trial guarantees of the United States Constitution. The defendants point out that the superseding indictment in this case was not brought until almost two years after the April 12, 2014 confrontation at the Bundy ranch. The defendants joining in this motion have all been in custody since their arrests in early-2016, and are awaiting trial. They have all unsuccessfully sought their release, some multiple times. Some of the defendants were also charged in the District of Oregon. Ammon and Ryan Bundy were detained in Oregon, and their detention in this case was partially based on the pending charges in Oregon. Both went to trial in Oregon and the jury acquitted them in October 2016. Ryan Payne entered a plea in Oregon and is awaiting sentencing there. Peter Santilli was initially charged in the Oregon prosecution, but the indictment against him was dismissed shortly before trial.

All of the moving defendants share similarities. None of the moving defendants have serious criminal records and many of them have no criminal record. All have been gainfully employed and have ties to their local communities. Many have histories of serving their country and their local community. All of them remain detained because of the seriousness of the charges, which they dispute and look forward to challenging at trial.

Although all of the defendants were arrested or in custody by March 2, 2016, it took more than a month to bring them all to this district. The last group of defendants, including Ryan Payne, Ammon Bundy, and Ryan Bundy, returned from Oregon for an initial appearance in this district on April 15, 2017. The defendants were initially joined for trial at the government's insistence. Three months before the scheduled February 6, 2017 trial date and almost six months after the

deadline for filing severance motions had passed, the government filed a request to sever the case insisting that a joint trial of 17 defendants was impractical. The court granted the government's request to sever the case into three separate tiers, but did not follow the government's request concerning the order of the trials. The court's order provided that the Tier 3 defendants would go to trial first on February 6, 2017, followed by the defendants grouped in Tier 1, which would proceed to trial 30 days after the conclusion of the first trial, with the Tier 2 defendants to go to trial 30 days after conclusion of the trial of the tier 1 defendants.

The court denied Ryan Payne's request to order the government to provide *Jencks* Act materials 90 days before the trial instead of the 30 days to which the government had previously agreed. Approximately 30 days before the beginning of the Tier 3 trial, the government provided a voluminous new batch of discovery that included much of the material relevant to that trial including interviews and reports of the government's numerous law enforcement witnesses. On January 30, 2017, the BLM released a redacted version of an investigative report involving instances of misconduct by a supervisory official. It was ultimately determined that the report involved Dan Love, the BLM law enforcement officer in charge of the cattle roundup in this case. The government elected not to call Dan Love at the first trial and has therefore not produced documents relevant to witness interviews and other evidence referred to in the investigation.

On May 25, 2017, the government produced additional discovery, including a threat assessment prepared by BLM in March 2014, regarding the cattle roundup. Defendants maintain this report should have been disclosed by the December 5, 2016 deadline for Phase I discovery established by the court's Case Management Order. The May 2017 production also included previously undisclosed April 2014 interviews with a law enforcement officer who claims to have been a witness to the Bunkerville standoff. In May 2017, the defendants also learned through news sources that Charles Johnson, the FBI agent who interviewed a number of the defendants posing as a documentary filmmaker for a company called Longbow, had been arrested and charged with unauthorized practice of private investigations in Colorado. The charge was dropped after prosecutors received a letter from the FBI. None of this was previously disclosed to the defense despite the fact that Charles Johnson was called as a witness during the Tier 3 trial.

Under all of these circumstances, the defendants argue that their detention has been so extensively prolonged that it is punitive in relation to Congress' regulatory goal, and therefore violates their rights under the Due Process Clause of the Fifth Amendment.  Citing *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988), the defendants argue that the Ninth Circuit has followed other circuits and has assumed that due process places a restriction on the ultimate length of detention and "requires assessment on a case-by-case basis."  The Ninth Circuit considers the length of confinement in conjunction with the extent to which to prosecution bears responsibility for the delay that has ensued.  In this case, the defendants' lengthy confinement is excessive and weighs heavily in favor of finding a due process violation.  The 30-day interval between the first trial and the second trial anticipated in the court's scheduling orders was not met after the first trial resulted in a mistrial.  Retrial of the tier 3 defendants commenced July 10, 2017 and was anticipated to take approximately two months to try.

All of the defendants incarcerated in this case have been detained much longer than the defendants in *Gelfuso* where the Ninth Circuit found that a 10-month delay did not violate due process.  The defendants argue that they are not responsible for any of the delay in this case.  Rather, the government is wholly responsible for the delay because it insisted on a complex case designation.  The government also initially objected to all attempts to sever the defendants, and later changed its position requesting that the case be severed into three groups for trial.  The court has not scheduled regular status hearings, or set hearings to resolve discovery issues, or held hearings on the majority of the motions filed by the defendants.  The government's disclosure of discovery is also a major ongoing concern.  A voluminous packet of discovery was produced 30 days before the February 6, 2017 trial began.  The government made more recent disclosures on May 25 and June 12, 2017.  The Tier 3 defendants moved to preclude admission of the evidence on the grounds they could not effectively review it before their trial on July 10, 2017.

Finally, the defendants argue they do not present a flight risk.  Absent the alleged conduct charged in the indictment, there would be little basis for their detention as either a risk of flight or a danger to the community.  Many people believe the federal government bears at least equal responsibility for the April 12, 2014 standoff.  The government's two-year delay in seeking an

indictment against the defendant belies any claims that the defendants are so dangerous that no condition of release can protect the community while they wait for trial. These defendants are no more dangerous or no more of a flight risk than the defendants the Second Circuit ruled were entitled to be released in *United States v. Gonzales-Claudio*, 806 F.2d 334 (2nd Cir. 1986). The government and the court have already committed a staggering amount of resources to the investigation, prosecution, and trials of the defendants charged in this indictment. Those resources could also include fashioning conditions or combinations of conditions that would allow the defendants to be released while awaiting their trials.

Ryan Bundy's joinder reiterates arguments made in prior motions that he is neither a flight risk, nor a danger to the community, and that the Bail Reform Act of 1984 is not an Act of Congress; therefore, the court lacks jurisdiction to detain him. He also argues that the court's failure to apply the Bail Reform Act of 1966, and his indefinite pretrial detention violates his due process rights under the Fifth Amendment. He maintains that the length of his confinement and delay in bringing him to trial, for which the government and the court are responsible, warrant his release on due process grounds.

### B. The Government's Response

The government filed a Response (ECF No. 2107) treating the motion as one filed by Payne with joinders by co-defendants Cliven, Ammon, Mel, and Dave Bundy, Brian Cavalier, Jason Woods, Peter Santilli, and Joseph O'Shaughnessy. The government opposes the motion arguing that in the Ninth Circuit, the due process limit on the length of pretrial detention requires assessment on a case-by-case basis "considering the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued." *Id*. at 3 (quoting *Gelfuso*, 838 F.2d at 359). Most courts addressing due process motions of this kind focus principally on three factors: (1) the non-speculative length of expected confinement; (2) the extent to which the government and/or the court system bears responsibility for pretrial delay; and (3) the strength of the evidence indicating a risk of flight, a threat to the trial process and/or danger to the community. The government cites *United States v. Ailemen*, 165 F.R.D. 571, 581 (N.D. Cal. 1996) for the proposition that, in general, the closer the length of pretrial detention gets to the probable

sentence, the more likely courts are to find a due process violation.

In this case, the defendants have been found to be both a danger to the community and a flight risk under the Bail Reform Act. At the time the government's response was filed, Payne's trial was set to begin 30 days after the conclusion of the retrial of the Tier 3 defendants. Thus, it is likely that he will be detained between one and three months from the date his motion was filed. However, even if his trial does not begin until as late as November, his total detention on these charges is less than 18 months. The government did not cause any unnecessary delay in this case. The government maintains that the record establishes that from the outset, the government has proceeded diligently to bring this case to trial. It has timely met its discovery obligations. The government has not requested any continuances and has promptly responded to over 160 defense motions. The government has also promptly responded to appeals and numerous motions either to reopen detention or obtain new detention hearings. The government was ready for the first trial setting, which began on the date set by the court. Nothing about the complex case designation, the severance plan, or the retrial of four of the six Tier 3 defendants was either improper or unnecessary. All of these issues have been litigated, re-litigated, and ruled upon by the court. Although Payne may disagree with the court's rulings, "his disagreement is not magic dust that suddenly transforms time into a due process violation." Response (ECF No. 2107) at 9.

The government contends that the evidence indicating the defendants are a risk of flight and a threat to the trial process and/or danger to the community is strong and supports denial of the motion. The government argues, as it did at numerous detention hearings, re-hearings, and appeals from detention hearings, that Payne and his co-defendants present a significant and imminent danger of violence to the community and a significant risk of flight. Payne does not recognize the authority of the federal government. The government maintains Payne has vowed to reoffend if given the opportunity and sees himself as a leader of a movement. Payne also does not recognize federal courts and is committed to violence against law enforcement officers who act as enforcers of court orders. His actions that resulted in his indictment in this case show that he acts upon his beliefs. He has placed innocent lives in serious jeopardy and is willing to do it again. The grand jury found probable cause to believe that he committed crimes of violence with

which he stands charged.  He faces a mandatory minimum sentence of 57 years' imprisonment, which far exceeds the pretrial detention he must endure through trial.  The government therefore asks that the court deny the motion.

### C.  Defendants' Reply

The Reply (ECF No. 2134) reiterates arguments that the defendants' pretrial incarceration in this case violates their due process rights, and that conditions can be fashioned to secure their release consistent with the provisions of the Bail Reform Act.

### DISCUSSION

### I.    LEGAL STANDARD

The defendants' motion is based on the Due Process Clause of the Fifth Amendment, which provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law."  U.S. Const. Amend. V.  The Due Process Clause prohibits punishing a pretrial detainee prior to an adjudication of guilt.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  However, it is well settled that a defendant accused of committing a crime may be detained prior to a formal adjudication of guilt.  *Id.* (citing *Gerstein v Pugh*, 420 U.S. 103, 111–14 (1975)).  The government has a substantial interest in ensuring that persons accused of crimes are available for trials, and serving their sentences if convicted, and pretrial detention is a legitimate means of accomplishing this interest.  *Id*. (citing *Stack v Boyle*, 342 U.S. 1, 4 (1951)).  A defendant charged in a federal case who has had a bail hearing may be detained pending trial and subjected to "restrictions and conditions of the detention facility so long as those restrictions do not amount to punishment or otherwise violate the Constitution."  *Id*. at 536.

In *United States v Salerno*, 481 U.S. 739 (1987), the Supreme Court granted certiorari to resolve a conflict in the Courts of Appeals regarding the constitutionality of the Bail Reform Act of 1984.  It held that the Act, which authorizes pretrial detention based on a judicial finding of future dangerousness, does not violate a defendant's substantive due process rights and "fully comports with constitutional requirements."  *Id*. at 741.  *Salerno* reversed the Court of Appeals for the Second Circuit, which had held the Act was unconstitutional on its face because pretrial detention based on an assessment of future dangerousness was "repugnant to the concept of

substantive due process which . . . prohibits the total deprivation of liberty simply as a means of preventing future crimes." *United States v Salerno*, 794 F.2d 64, 71–72 (2d Cir. 1986). The Supreme Court reasoned that the Act provides for a prompt detention hearing "and the maximum length of pretrial detention is limited by the stringent time limits of the Speedy Trial Act." *Salerno*, 481 U.S. at 747. It therefore concluded that the Act "is regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." *Id*. at 748.

*Salerno* also held that the Act did not violate the Excessive Bail Clause of the Eighth Amendment, which provides that "[e]xcessive bail shall not be required." *Id* at 752. The Supreme Court rejected the argument that the Eighth Amendment requires that a criminal accused be admitted to bail stating that the Clause "says nothing about whether bail shall be available at all." *Id* at 753–54. The *Salerno* decision traced the origin of the Eighth Amendment to the English Bill of Rights Act, which "has never thought to accord a right to bail in all cases but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail." *Id*. at 754 (quoting *Carlson v Landon*, 342 U.S. 524, 545–46 (1952)). The high court reasoned "[w]e believe that when Congress has mandated detention on the basis of a compelling interest other than prevention of flight, as it has here, the Eighth Amendment does not require release on bail." *Id*. at 754–55. The Supreme Court found that although "liberty is the norm" in our society "detention before trial or without trial is the carefully limited exception" and that "the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception." *Id*. at 755.

The Supreme Court squarely held in *Salerno* that the Bail Reform Act of 1984 does not violate "either the Due Process Clause of the Fifth Amendment or the Excessive Bail Clause of the Eighth Amendment." *Id*. However, the Supreme Court explicitly expressed "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id*. at 747 n.4.

Since *Salerno* was decided, the Supreme Court has not addressed at what point pretrial detention may be excessively prolonged and therefore punitive rather than regulatory. The Ninth Circuit has held "that the due process limit on the length of pretrial detention requires assessment on a case-by-case basis." *United States v Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988). In this case-

by-case assessment, the court considers "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued." *Id*. In *Gelfuso*, the Ninth Circuit held that defendants due process rights were not violated by pretrial detention for 10 months "plus the time consumed in trial." *Id*. There, the district court found that the government was not responsible for the pretrial delay, and the Court of Appeals held that the record supported this finding. The Ninth Circuit explicitly declined to decide "whether, absent the government's responsibility for pretrial delay" the defendants' preventative detention "reaches the point at which pretrial detention violates the defendants' due process rights." *Id*. The Ninth Circuit noted that "periods of delay occasioned in section 3161(h) of the Speedy Trial Act are excluded in computing the Act's time limitations." *Id*. at 360. However, the Ninth Circuit expressed "no view as to the point at which detention in a particular case might become excessively prolonged and violate due process." *Id*.

## II.    ANALYSIS

Four of the moving defendants, Ryan Payne, Cliven Bundy, Ammon Bundy, and Peter Santilli, are now set for trial October 10, 2017. The remaining five defendants, Mel Bundy, Dave Bundy, Brian Cavalier, Joseph O'Shaughnessy, and Jason Woods, will proceed to trial 30 days after the conclusion of the October 10, 2017 trial. During the August 31, 2017 hearing before the district judge, the government estimated that its case in chief against the seven defendants now set for trial October 10, 2017, would last six to seven weeks. Mins. of Proceedings (ECF No. 2331). The defendants did not provide an estimate for the length of their case in chief. At the request of counsel for Santilli, the district judge advised defense counsel to have defense witnesses prepared to testify by December 4, 2017. Even without a defense estimate of the time anticipated for the defense's case in chief it is likely that the trial is likely to last through mid-to-late December 2017. Trial of the remaining Tier 2 defendants is therefore unlikely to start before February 2018.

Each of the moving defendants has been in custody in this case for approximately 16–17 months. Four of the moving defendants will begin trial October 10, 2017, and will have been in custody approximtely 18–19 months since being detained. The remaining five defendants should begin trial by February 2018, approximately 23 months after being detained.

1    The defendants' arguments that they are neither a flight risk or a danger to the community,

2    as defined by the Bail Reform Act of 1984, have been addressed many, many different times, by

3    multiple magistrate judges in the districts of Oregon, Arizona, and Utah, as well as five different

4    magistrate judges in this district.  The detention orders have also been appealed and decided by

5    the district judge in this case, and the Ninth Circuit.  All of the judges who have conducted

6    hearings, or reviewed appeals of detention decisions, have concluded that the moving defendants

7    should be detained as a flight risk or danger to the community or both.

8    Cliven Bundy was arrested in the District of Oregon on a criminal complaint issued in this

9    district and appeared for a detention hearing on February 16, 2016.  Rule 5(c)(3) Docs. (ECF

10   No. 24).  He was ordered detained as a flight risk and a danger to the community.  He appeared in

11   this district and requested release.  Mar. 10, 2016 Mins. of Proceedings (ECF No. 107).  His request

12   was treated a motion to reopen detention.  Mar. 17, 2016 Mins. of Proceedings (ECF No. 141).

13   After another hearing he was again ordered detained as a risk of non-appearance and danger to the

14   community.  Order (ECF No 149).  Counsel for Cliven Bundy filed an appeal of his order of

15   detention, which the district judge considered and denied in a written Order (ECF No. 489) entered

16   May 31, 2016.  Cliven Bundy appealed his detention to the Ninth Circuit, which affirmed the

17   district court's pretrial detention order in an Order (ECF No. 636) entered August 12, 2016.  The

18   Ninth Circuit held that the district court correctly found that the government had met its burden of

19   showing, by a preponderance of the evidence, that no condition or combination of conditions

20   would reasonably assure his appearance.  *Id*.  The Ninth Circuit also held that the district judge

21   correctly found, by clear and convincing evidence, that no condition or combination of conditions

22   would reasonably assure the safety of the community.  *Id.*

23   Ryan Payne was initially arrested in the District of Oregon and detained in that case both

24   as a risk of non-appearance and a danger to the community on January 29, 2016.  He made his

25   initial appearance in this district on the superseding indictment on April 15, 2016, Mins. of

26   Proceedings (ECF No. 249), and was detained as a risk of flight and a danger to the community.

27   Order of Detention (ECF No. 277).  He filed a Motion to Reopen Detention (ECF No. 1208), which

28   was denied in a written Order (ECF No. 1377) entered January 20, 2017.

Ammon Bundy was arrested in the District of Oregon and ordered detained as a risk of flight and danger to the community on charges filed in that district on January 29, 2016. He made his initial appearance in this district on April 15, 2016, Mins. of Proceedings (ECF No. 248), and was ordered detained as a flight risk and danger to the community at a detention hearing conducted April 20, 2016. Mins. of Proceedings (ECF No. 289), Order of Detention (ECF No. 299).

Peter Santilli was arrested in the District of Oregon on charges in that district and on the superseding indictment in this case was detained as a risk of flight and a danger to the community following a detention hearing on March 11, 2016. Rule 5(c)(3) Docs. (ECF No. 142-8). He appeared in this district on March 30, 2016, Mins. of Proceedings (ECF No. 210), and filed a Motion for Review of Detention Order (ECF No. 324) on April 27, 2016. The district judge considered and denied the motion in a written Order (ECF No. 406) entered May 12, 2016. He appealed the district judge's detention order to the Ninth Circuit, which affirmed the order of detention in an Order (ECF No. 525) entered June 10, 2016. The Ninth Circuit held that the district judge correctly found Santilli was a flight risk and danger to the community applying the correct standard.

Mel Bundy was initially arrested in the District of Arizona on the superseding indictment in this case and made an initial appearance on March 4, 2016. Rule 5(c)(3) Docs. (ECF No. 102). He requested a detention hearing in this district and made his initial appearance here March 21, 2016. Mins. of Proceedings (ECF No. 164). He was detained as a danger to the community following a detention hearing. Order of Detention (ECF No. 197). He filed a Motion to Reopen Detention (ECF No. 633), which was denied following a hearing on September 20, 2016. Mins. of Proceedings (ECF No. 678).

Dave Bundy was arrested in the District of Utah on the superseding indictment in this case and was detained following a hearing on March 9, 2016, as a flight risk and danger to the community. He made an initial appearance in this district on March 21, 2016. Mins. of Proceedings (ECF No. 167). He filed a Motion to Reopen Detention (ECF No. 297). The motion was granted to the extent the magistrate judge conducted a hearing, but denied on the merits following the May 16, 2016 hearing. Mins. of Proceedings (ECF No. 419). He filed a Motion to

Revoke Pretrial Detention Orders (ECF No. 526), which the district judge denied as untimely on June 21, 2016.  Min. Order (ECF No. 558).

Brian Cavalier was arrested on February 5, 2016, in the District of Oregon on charges in that district, and he was detained as a flight risk and danger to the community.  He made his initial appearance in this district on April 15, 2016, Mins. of Proceedings (ECF No. 250), and was ordered detained after a detention hearing as a flight risk and danger to the community.  Order of Detention (ECF No. 278).

Joseph O'Shaughnessy was arrested in the District of Arizona on the superseding indictment in this case on March 8, 2016, and was ordered detained following a detention hearing as a risk of flight and danger to the community.  Rule 5(c)(3) Docs. (ECF No. 123).  He appealed that order to the district court in Arizona, which found it lacked jurisdiction to review.  He made his initial appearance in this district on March 16, 2016.  Mins. of Proceedings (ECF No. 146).

Jason Woods was arrested in the district of Arizona on March 8, 2016, and was detained as a flight risk and danger to the community following a detention hearing.  Rule 5(c)(3) Docs. (ECF No. 121).  He made an initial appearance in this district on March 16, 2016, and filed a Motion for Revocation of Detention Order (ECF No. 192) on March 25, 2016.  The district judge ordered him detained in a written detention order (ECF No. 243) entered April 15, 2016.  He filed a Motion to Reopen Detention (ECF No. 894), which was denied in a written Order (ECF No. 1996) on May 22, 2017.  He filed an appeal of the denial of his motion to reopen (ECF No. 2045), which is pending before the district judge.

Ryan Bundy was arrested in the District of Oregon on charges in that district in January 2016.  He was detained following a detention hearing as a danger to the community and risk of flight.  He made his initial appearance in this district on April 15, 2016.  Mins. of Proceedings (ECF No. 247).  He was ordered detained as a flight risk and as a danger to the community on the charges in the superseding indictment following a detention hearing on April 20, 2016.  Order of Detention (ECF No. 298).  He filed an Objection (ECF No. 367) to the detention order, which the district judge denied in a written Order (ECF No. 1078) on December 7, 2016.  The following day he filed a Motion to Reopen Detention (ECF No. 1082).  The motion was granted to the extent the

magistrate judge conducted a hearing, *see* Order (ECF No. 1263), Mins. of Proceedings (ECF No. 1459), but denied on the merits on February 7, 2017. Order (ECF No. 1550). He filed an Objection (ECF No. 1720) on March 14, 2017, which the district judge denied as untimely. Min. Order (ECF No. 1729).

The defendants have been detained for some time and face additional detention through trial. In deciding whether their continued detention violates their due process rights the Ninth Circuit directs the court to consider the length of their detention in conjunction with the extent to which the government is responsible for the delay. The moving defendants advance three reasons why the government is responsible for the delay. First, they argue, this case has been delayed because the government insisted the case should be designated as complex. This argument completely ignores the fact that 13 of the 19 defendants charged in the superseding indictment initially stipulated the case was complex, and requested a trial setting on the first available date on the court's February 2017 trial stack. Moving defendants Cliven Bundy, Mel Bundy, Dave Bundy, Joseph O'Shaughnessy, and Jason Woods are among the defendants who initially stipulated to designate this case as complex and a February 2017 trial date. Defendants Ammon Bundy, Peter Santilli, and Brian Cavalier deferred decision to agree or disagree about a trial date pending further consultation with counsel. Ryan Bundy disagreed that the case should be designated as complex to the extent time is excluded under the STA. For the reasons the court explained in the Case Management Order (ECF No. 321), this case is complex within the meaning of 18 U.S.C. § 3161(h)(7)(B).

Second, the defendants assert the government is responsible for the delay in bringing them to trial because the government opposed their severance motions, persuaded the court to leave them joined for trial and then changed positions asking for severance into three groups for trial. It is undisputed that the government charged all 19 defendants in a superseding indictment and persuaded the court to keep them joined for trial. Only after the defendants in the Oregon prosecution were acquitted and it became clear the 17 defendants who had not reached plea agreements would proceed to trial did the government propose severance into three groups for trial. However, the defendants have also changed positions regarding severance. Moving

defendants Cliven Bundy, Ryan Payne, Peter Santilli, Mel Bundy, Joseph O'Shaughnessy and Jason Woods initially asked to be severed from the trial of their co-defendants and to be tried separately. Ryan, Ammon, and Dave Bundy asked to be tried with their brothers, but not their father. After the government proposed the three-tier severance, Cliven Bundy asked for a joint trial with all 16 co-defendants. Ryan and Ammon Bundy asked for a joint trial with all co-defendants, or in the alternative that they be tried with their brothers. Santilli stated "first and foremost" he wanted a separate trial, or, alternatively, a joint trial with all co-defendants. Brian Cavalier initially took no position with respect to severance but later asked to be tried with the Tier 1 defendants. Mel Bundy asked for a joint trial with all co-defendants. Dave Bundy proposed three alternatives: severance from all co-defendants, that he be tried with brothers Ryan, Ammon and Mel, or tried only with Mel. O'Shaughnessy and Woods stated that being tried February 6, 2017, outweighed their desire to be severed.

The court concluded that trial of all 17 defendants in this complex multi-defendant case involving voluminous discovery and a large number of witnesses would be inefficient and fraught with problems. For the reasons explained in the written orders granting severance, the court found that three separate trials would best further the interests of judicial economy and efficient case management. *See* Orders (ECF Nos. 1098, 1100–06, 1108–13). However, the court ordered the Tier 3 defendants to proceed to trial first because the government identified this group as the least culpable among the three. The first trial went forward on February 6, 2017, as a majority of the parties initially requested.

The court has made appropriate findings that the time between arraignment and pleas and the trial was excluded under the provisions of the Speedy Trial Act. When the first trial resulted in a partial verdict and mistrial, the case was reset for trial within the time allowed by the STA. It was the four defendants who were retried that requested a brief extension, initially over the government's objection. The four defendants and the government then stipulated to a brief extension and that the time was excluded under the STA. The district judge granted their request making the appropriate STA findings. The second trial proceeded on schedule, and has again resulted in a partial verdict. At the hearing on August 31, 2017, the district judge asked if the

Tier 1 defendants could be prepared for trial September 25, 2017, 30 days after the conclusion of the second trial.  Counsel for Payne indicted the date was "problematic" because his jury consultant was not available until October 9, 2017.  After canvassing all of the Tier 1 defendants and counsel for Parker and Drexler, the district judge set Parker, Drexler, and the Tier 1 defendants for trial October 10, 2017.  The court and the parties are devoting enormous resources to get this case tried and concluded as expeditiously as possible.

Finally, the defendants argue that the government is responsible for delaying this case because it produced voluminous discovery 30 days before the February 6, 2017 trial date, and has subsequently produce additional discovery in late June and early May.  However, the supplemental production did not, in fact, delay the first trial, which started on time as scheduled.  Moving defendants have now had months to review the January, May, and June productions and have made no showing that this additional discovery will prevent them from being prepared for the October 10, 2017 trial date.  To the contrary, the defendants have repeatedly argued that the government has not produced enough discovery, and filed a number of motions to compel the government to produce more materials.  The defendants have aggressively sought additional discovery from the government and non-parties throughout this case.  The most recent Motion to Compel (ECF No. 2299) was filed by counsel for Payne on August 22, 2017.  The government's response to this motion is not yet due.  The court does not fault the defense counsel for vigorously representing their clients.  However, the defendants have filed over 200 substantive motions, many of which are duplicative.  The government has responded to all of their motions and has not asked for extensions.  In short, the government's supplemental discovery productions have not delayed this case from proceeding to trial.

The court finds that the moving defendants' due process rights have not been violated by the length of their pretrial confinement.  Five of the moving defendants will be brought to trial within 18–19 months of their detention.  The remaining defendants should be brought to trial with two years of their pretrial detention.  The court finds that, to date, the government has not been responsible for pretrial delay in bringing this complex multi-defendant case to trial as expeditiously as possible.  The periods of delay that have occurred are excludable under the relevant provisions

of the STA cited in numerous stipulations and orders.

For these reasons,

**IT IS ORDERED:**

1. Defendants Ryan Bundy, Cliven Bundy, Peter Santilli, Ammon Bundy, Brian Cavalier, Dave Bundy, and Mel Bundy's Motions for Joinder (ECF Nos. 2093, 2307, 2310, 2311, 2315, 2316, 2327, 2334) are **GRANTED** in that defendants are granted leave to join in the substantive arguments.

2. Defendants' Emergency Motion to Release Defendants on Due Process Grounds (ECF No. 2066) is **DENIED**.

3. Defendant Ryan Payne's Motion for Ruling (ECF No. 2303) is **GRANTED** to the extent that the court has now ruled on the motion.

4. Defendant Ryan Bundy's Alternative Motion to Grant Pretrial Release based on Due Process Violation (ECF No. 2069) is **DENIED**.

Dated this 1st day of September, 2017.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE