# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,              )
                                       )
                    Plaintiff,         )        Case No.: 2:16-cr-46-GMN-PAL
                                       )
        vs.                            )
                                       )        **ORDER**
CLIVEN D. BUNDY *et al.*,              )
                                       )
                    Defendants.        )
_____)

Pending before the Court is the Motion in Limine ("MIL"), (ECF No. 2514), filed by the Government to preclude evidence that is irrelevant and offered in support of jury nullification. Defendants Cliven D. Bundy ("Cliven Bundy") and Ryan W. Payne ("Payne") filed timely Responses. (ECF Nos. 2555, 2568).[1]  Co-defendants Eric J. Parker ("Parker") and Ammon E. Bundy filed Motions for Joinder to the Responses. (ECF Nos. 2651, 2676).  The Government filed a Reply. (ECF No. 2699).  For the reasons discussed below, the Court **GRANTS in part and DENIES in part** the Government's MIL.

## I.    BACKGROUND

On March 2, 2016, a federal grand jury sitting in the District of Nevada returned a Superseding Indictment charging nineteen defendants with sixteen counts related to a confrontation on April 12, 2014, with Bureau of Land Management ("BLM") Officers in Bunkerville, Nevada. (ECF No. 27).

---

[1] On September 29, 2017, Defendant Ryan C. Bundy filed a Response, (ECF No. 2594), to the Government's MIL.  His Response did not contain any legal arguments in relation to the MIL and therefore the Court deems it meritless.

## II.    LEGAL STANDARD

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a).  In order to satisfy the burden of proof for Federal Rule of Evidence 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [Federal Rules of Evidence] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)).  In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41 (noting that in limine rulings are always "subject to change," especially if the evidence unfolds in an unanticipated manner).

## III.    DISCUSSION

In the instant MIL, the Government seeks to preclude Defendants from addressing or eliciting "information or argument that: portrays or implies that the law  enforcement officers acted unlawfully or unethically during impoundment operations; or that the actions of the defendants were justified by the U.S. Constitution or other law" because they are irrelevant and offered in support of jury nullification. (Gov't. Mot. 1:23–2:3, ECF No. 2514).  Specifically, the Government seeks to preclude the following:

1.  Self-defense, defense of others, or defense of property, justification, necessity arguments which have no foundation in the law;

2. Third-party/lay person testimony or opinion about the level of force displayed or used by law enforcement officers during impoundment operations, including operations on April 6, 9, and 12, 2014;

3. Opinions/public statements of Governor Brian Sandoval of April 8, 2014, and/or opinions registered by other political office holders or opinion leaders about BLM impoundment operations;

4. Allegations of workplace misconduct by the SAC of the impoundment, or regarding those who worked for, or with, him.

5. Allegations that officers connected with the impoundment acted unethically or improperly by the way they were dressed or equipped during the impoundment, or that they improperly shredded documents during or after impoundment operations;

6. References to supposed mistreatment of cattle during the impoundment operations;

7. Legal arguments, beliefs, explanations, or opinions that the federal government does not own the land or have legal authority or jurisdiction over public lands where impoundment operations were conducted, or that the land was or is otherwise owned by the State of Nevada;

8. Legal arguments, beliefs, explanations, or opinions regarding infringement on First and Second Amendment rights, including any effort to confuse the jury that there is some form of "journalist" or "protest" immunity for the crimes charged;

9. References to punishment the defendants may face if convicted of the offenses;

10. References to the Oregon trial of *United States v. Ammon Bundy, Ryan Payne, and Ryan Bundy.*, or the results in that trial;

11. References to the outcomes in the previous two trials in this case; and

12. Legal arguments, explanations, or opinions advancing defendants' views of the U.S. Constitution, including claims that law enforcement officers within the Department of Interior have no constitutional authority, that "natural law" or other authority permits the use of force against law enforcement officers in defense of property or individual rights, or that the U.S. District Court for the District of Nevada has no jurisdiction or authority under the [C]onstitution to order the removal of cattle from public lands.

(Gov't. Mot. 2:5–3:14).  The Court will group these twelve specifically identified issues into six categories: (1) self-defense (issue one); (2) statements by third parties and state of mind (issue two and three); (3) perceived government misconduct (issues four, five, and six); (4) prior verdicts (issue ten, eleven); (5) legal argument (issues seven, eight, twelve); (6) references to punishment (issue nine).  The Court will address each issue in turn.

### A.  Self-Defense

The Government argues that an "ungrounded self-defense argument should not be permitted as its sole purpose would be to allow Defendants the opportunity to introduce nullification" because "there is no evidence that BLM officers used excessive force or were not readily identifiable on April 12, 2014." (Gov't. Mot. 7: 17–18, 9:2–3).  Further, the Government avers that the Court should preclude evidence of Defendants' views that the U.S. Constitution justifies "their actions during the impoundment operation, including a right to 'defend their property rights.' [Because] [n]either the U.S. Constitution nor any other law recognizes 'defense of property' 'necessity' or 'justification' as a defense to assault on a federal officer or extortion." (*Id.* 9:15–20).

Cliven Bundy Responds that Defendants "may argue preparation for self-defense to offer an innocent explanation as to why they were armed and prepared to defends [sic] themselves from excessive force." (Def. Resp. 15:11–14, ECF No. 2555).  Payne responds that he does not believe it necessary to rely upon any affirmative defenses. (Def. Resp. 7:24–26, ECF No. 2568).

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015).  Therefore, if evidence is not relevant to any of the elements of a charge or a cognizable defense to that charge, the evidence is not admissible.

Here, during Trial 1, at the close of the evidence, the Court examined the proffered jury instructions and determined that Defendants were not entitled to a jury instruction on Self-

Defense or Justification based on the evidence provided.[2] (Trial 1 Day 27 Tr. 142:16–152:12, ECF No. 2001).  This ruling is applicable to the upcoming trial because Defendants have failed to establish the essential elements necessary for the defense.  Thus,  any other evidence relating only to that defense is irrelevant at trial unless Defendants can provide an offer of proof outside the presence of the jury that the defense instruction should apply.  Therefore, the Court GRANTS the Government's MIL as to evidence of self-defense.

### B.  Statements by Third Parties and State of Mind

The Government argues that "officer conduct is not at issue unless it gives rise to a claim of self-defense.  Here it does not[,]" therefore, Defendants should not be permitted "to present lay or third-party testimony or opinions and/or argue, explain, or expound upon their 'thoughts' about what the BLM was doing or should have been doing during impoundment operations." (Gov't. Mot. 10:20–21, 15:6–8).  Moreover, the Government claims that "the fact that a defendant testifies about his opinions and beliefs about the conduct of the BLM, or attempts to explain or justify those belief and opinions, does not cloak them with the mantle of admissibility even if it they are offered to supposedly describe or explain a defendant's thinking ('state of mind') at the time." (*Id.* 11:13–17).

Cliven Bundy responds that "Defendants have a right to show facts which are 'inextricably intertwined' with a criminal charge" and settings and circumstances of a criminal charge. (Def. Resp. 11:19, 12: 3–5, ECF No. 2555).  Cliven Bundy claims that Defendants "may present evidence of their rationales behind their actions to defend themselves from specific-intent crimes" charged in this case. (*Id.* 8:10 –13).  Additionally, Cliven Bundy asserts that he "has a right to inform the jury that the [BLM's] release of cattle on April 12, 2014 was

---

[2]  In the context of 18 U.S.C. § 111, assault on a federal officer (the only specific intent crime charged against Defendants), the Ninth Circuit recognizes two forms of self-defense: (1) "ignorance of the official status of the person assaulted," *United States v. Feola*, 420 U.S. 671, 686 (1975); and (2) an excessive force defense, *United States v. Span*, 75 F.3d 1383, 1389 (9th Cir. 1996).

1  caused by widespread community outrage, media pressure, political pressure, the Defendants'

2  lawful protest, and not the alleged criminal actions of Defendants." (Resp. 12:26–13:3, ECF

3  No. 2555).

4        Payne responds that "his liability depends on his alleged intent to facilitate a specific

5  intent crime either as a member of a conspiracy or as an 'aider and abettor.'" (Def. Resp. 5:10–

6  11, ECF No. 2568).  Payne claims that "the critical views and descriptions of the government's

7  conduct voiced by 'opinion leaders,' such as Governor Sandoval, Dean Heller, Sean Hannity

8  and others, are directly relevant to this issue." (*Id.* 21:7–9).  Further, "[p]]eople can sincerely,

9  and indeed reasonably, have concerns about the government's actions when they are being

10  voiced by national media outlets and high-ranking state and federal officials." (*Id.* 21:9–11).

11  Payne claims that "to the extent that he and other defendants can show they were aware of such

12  statements, they are relevant to demonstrate their intent." (*Id.* 21:11–13).  Further, Payne

13  asserts that "evidence of the extensive media and public criticism of the BLM's conduct is also

14  relevant to explain that Payne is not responsible for the recruitment or conduct of most of the

15  protesters." (*Id.* 14:1–3).

16        During Trial 1, the Court only admitted Governor Sandoval's statement for the effect on

17  the listener, Parker, who was testifying about his state of mind regarding the BLM's use of

18  excessive force. (*See* Trial 1 Day 26 Tr. 35:11–14, ECF No. 2000).  However, after Defendants

19  finished presenting evidence, it became apparent that Defendants failed to meet their burden to

20  demonstrate the objective reasonableness of Defendant's claimed state of mind.  Objective

21  reasonableness is a legal prerequisite for the defense theory of excessive force self-defense. *See*

22  *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012).  To preliminarily exclude

23  all evidence of Defendants' state of mind and effect on the listener, would improperly prevent

24  Defendants from fully presenting defenses to the jury.  Thus, to the extent that Defendants meet

25  their burden to demonstrate the objective reasonableness of Defendant's claimed state of mind

at trial, the evidence is admissible. *See* Fed. R. Evid. 401, 402. As such, the Court DENIES the Government's MIL as to third party statements and state of mind evidence at this time.

### C. Perceived Government Misconduct

The Government argues that submitting evidence intending to suggest

> that BLM officers were "militarized" (e.g., wearing their uniforms and carrying their firearms), that they "brutalized" protestors on April 6 or 9, 2014, that they "occupied" Bunkerville (e.g., brought sufficient personnel to conduct a far-ranging cattle operation and stayed in the local hotels), that they established rights-crushing First Amendment zones (safe places with parking off widely used roads that would always be open to the public), that they indiscriminately killed cattle (when some were humanely euthanized following injury), and similar arguments constitute nothing more than unfairly prejudicial and inadmissible attacks on the victims of these crimes.

(Gov't. Mot. 16:7–15). Additionally, the Government seeks to preclude any evidence or argument that the officers connected to the impoundment "are alleged to have engaged in workplace misconduct." (*Id.* 16:17–18).

Payne responds that "evidence of the information available to [him] and evidence of the BLM's conduct is necessary to fairly explain that he was acting out of a good faith concern for the security of the Bundys and their supporters, and not to encourage or facilitate any criminal activity." (Def. Resp. 9: 1–3, ECF No. 2568). Payne seeks to admit evidence "of the extensive preparations, armament, and defensive capabilities" of the BLM's conduct because it is "relevant to rebut testimony about the subjective fears of the government agents in the wash." (*Id.* 15:1–2, 15:10–11). Payne argues that the alleged misconduct demonstrates bias because it "provides an incentive for these same officers to falsely accuse the protesters and defendants of being responsible for creating a danger in the wash and forcing them to leave." (*Id.* 13:20–22). Moreover, Payne claims that the "evidence of misconduct is relevant to rebut the government's

insistence that it did nothing wrong, and to impeach the testimony of the government's witnesses." (*Id.* 23:5–6).

The Court finds that at least some of the subject matter pertaining to perceived government misconduct is relevant to defending against these charges. In particular, such evidence and testimony supports a defense to Count Sixteen, Interstate Travel in Aid of Extortion pursuant to 18 U.S.C. § 1952; Count Twelve, Obstruction pursuant to 18 U.S.C. § 1503; and Count Five, Assault on a Federal Officer pursuant to 18 U.S.C. § 111(a)(1) and (b). (See Superseding Indictment, ECF No. 27). Further, some of this evidence may be relevant to an excessive use of force defense to Count Five. *See United States v. Span*, 75 F.3d 1383, 1389 (9th Cir. 1996). To preliminarily exclude all evidence of perceived government misconduct at this stage would improperly prevent Defendants from fully presenting these defenses to the jury. Accordingly, the Court DENIES the Government's request to exclude all reference to perceived government misconduct to the extent it is relevant to defenses raised by Defendants.

To clarify, the instant Order is not a ruling that all subject matter related to perceived government misconduct is admissible. Rather, the Court merely finds that a blanket exclusion of these topics is inappropriate at this juncture. The parties must still demonstrate that all evidence and testimony is relevant to an element of a charged offense or a defense thereto pursuant to Federal Rule of Evidence 401.

### D. Prior Verdicts

The Government argues that Defendants "should not be permitted to introduce any evidence or make any argument with reference to acquittals or hung juries either in the *Malheur* case or previous trials in this case" because this evidence is irrelevant. (Gov't. Mot. 19: 13–15). Payne responds that if the Court intends to allow the Government to provide evidence suggesting Defendants "were engaged in a 'conspiracy' in Oregon" or evidence "that Payne

participated in a conspiracy with Eric Parker or O. Scott Drexler" then the jury is entitled to know about the prior verdicts. (Def. Resp. 26: 11–17, ECF No. 2568).

The federal circuit courts overwhelmingly agree with the Government.  Federal courts uphold exclusion of acquittals as hearsay because, "[u]nlike judgments of conviction, which may be admitted under Rule 803(22) of the Federal Rules of Evidence for some purposes, and used for impeachment under Rule 609, judgments of acquittal are not covered by an exception to the rule against admission of hearsay." *United States v. Irvin*, 787 F.2d 1506, 1516–17 (11th Cir. 1986); *see also United States v. Bisanti*, 414 F.3d 168, 172–73 (1st Cir. 2005); *United States v. Gricco*, 277 F.3d 339, 353 (3d Cir. 2002) (same), *overruled on other grounds*, *United States v. Cesare*, 581 F.3d 206, 208 n. 3 (3d Cir. 2009); *United States v. De La Rosa*, 171 F.3d 215, 219–220 (5th Cir. 1999) (explaining that evidence of an acquittal is properly excluded as hearsay) (citing *United States v. Sutton*, 732 F.2d 1483, 1492 (10th Cir. 1984)); *United States v. Thomas*, 114 F.3d 228, 250 (D.C. Cir. 1997) (holding evidence of judgments of acquittal properly excluded as hearsay and as "generally ... not relevant because they simply show that the government failed to prove guilt beyond a reasonable doubt"), cert. denied, 522 U.S. 1033 (1997); *United States v. Viserto*, 596 F.2d 531, 537 (2d Cir. 1979).

Federal circuit courts also find evidence of an acquittal inadmissible as irrelevant. *See, e.g., United States v. Kerley*, 643 F.2d 299, 300–01 (5th Cir. 1981) ("[E]vidence of a prior acquittal is not relevant because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime.").  Here, the Government properly argues that the prior verdicts are irrelevant and Defendants do not provide any legal basis to contest this argument. Consequently, given the tremendous federal history of excluding evidence of a prior acquittal, the Court likewise GRANTS the Government's request to exclude evidence of Defendant's prior verdicts.

### E.  Legal Argument

The Government argues that Defendant's "views on the validity of federal laws" as a basis for a defense of good faith "are immaterial to any admissible defense" and should be "excluded as improper jury nullification arguments." (Gov't. Mot. 19:18–19, 20:22–21:1).

Payne responds that "[t]his argument is mostly irrelevant to [his] defense." (Def. Resp. 26:21, ECF No. 2568).  Moreover, Payne asserts that his "security concerns did not simply arise from a legal belief that the government lacked the authority to impound the cattle, but on a factual belief that the government agents (even if they did have such authority) were acting in a manner that was dangerous and unlawful." (*Id.* 18:8–10).  As such, Payne intends to raise the defense that Payne's sincere beliefs regarding the BLM's actions and the dangers they posed to others demonstrated he lacked the intent to commit a crime." (*Id.* 26:25–26).

As to jury nullification generally, the Ninth Circuit recently explained the following:

> Jury nullification occurs when a jury acquits a defendant, even though the government proved guilt beyond a reasonable doubt. *United States v. Powell*, 955 F.2d 1206, 1212–13 (9th Cir. 1992). . . . [J]uries do not have a right to nullify, and courts have no corresponding duty to ensure that juries are able to exercise this power, such as by giving jury instructions on the power to nullify. [*Merced v. McGrath*, 426 F.3d 1076,  1079–80 (9th Cir. 2005).]  On the contrary, "courts have the duty to forestall or prevent [nullification], whether by firm instruction or admonition or . . . dismissal of an offending juror," because "it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." *Id*.

*United States v. Kleinman*, 859 F.3d 8254 (9th Cir. 2017).  As the Court has warned the parties before (*see, e.g.*, ECF No. 2012) (Calendar Call for retrial where the Court stated "that no jury questions will be permitted for the purpose of jury nullification"), there will be no argument or evidence directed at jury nullification.

Indeed, a good faith belief that a law is unconstitutional is not a valid defense. *See, e.g.*, *Cheek v. United States*, 498 U.S. 192, 204 (1991) ("[A] Defendants' views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and, if they are, an instruction to disregard them would be proper."); *United States v. Greatwood*, 187 F.3d 649, *2 n.4 (9th Cir. 1999) (noting with approval that "jury was . . . instructed that a good faith disagreement with the law is not a defense" and that "[defendant] was not permitted to argue that his legal theories are correct."); *United States v. Atkinson*, 232 F.3d 897, *1 (9th Cir. 2000) (rejecting Defendants' argument that "his subjective good faith belief that federal laws are not constitutional as applied to a him, a state citizen, defeats the jury's finding of 'willfulness'").

Accordingly, the Court GRANTS the Government's request to exclude argument, evidence, or testimony explaining, demonstrating, or supporting Defendants' beliefs regarding the Constitution and federal law as irrelevant and as a possible jury nullification attempt. *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1991) (affirming district court's decision not to instruct jury that: "If you feel strongly about the values involved in this case, so strongly that your conscience is aroused, then you may, as the conscience for the community, disregard the strict requirements of the law").  However, to the extent that these beliefs are interlaced with independently admissible evidence, such evidence will not be excluded simply because it references these opinions.

### F.  References to Punishment

The Government claims that "[s]o-called 'send a message' arguments and inquiries of witnesses into potential punishment were made to or in front of the jury during Trial 1.  They may occur during Trial 3.  Such arguments are blatantly improper and should be precluded." (Gov't. Mot. 23:10–13).  Defendants do not address testimony by witnesses related to punishment in their Responses.

The Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI.  The "essential purpose" of the right is to secure the opportunity for cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).  However, a defendant does not possess an unlimited right to "cross-examination that is effective in whatever way, and to whatever extent, [she] might wish." *Evans v. Lewis*, 855 F.2d 631, 634 (9th Cir. 1988) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).  One such limitation is regarding sentencing: "[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Shannon v. United States*, 512 U.S. 573, 579 (1994).  Indeed, "[i]t has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir.1991).

During Trial 1, once outside the presence of the jury, the Court admonished Steven Stewart's counsel for questioning a witness in front of the jury about punishment. (*See* Trial 1 Day 16 Tr. 79:2–13, ECF No. 1827).  The Court explained that under *Shannon v. United States*, 512 U.S. 573, 579 (1994), possible sentences of Defendants are not relevant before the jury. (*Id*.).  Further, the Court found in its prior order that it was not appropriate for Defendants to inquire as to a length of sentence avoided by the witness at issue from Trial 1. (*See* Order, ECF No. 2137); *see also United States v. Larson*, 495 F.3d 1094, 1106 (9th Cir. 2007) ("[I]t is not error for the district court to prohibit cross-examination regarding the potential maximum statutory sentence that the witness faces.").  The Court finds that its prior holding granting the Government's motion to exclude references to punishment applies to the current trial. (*See id*.). Accordingly, the Court GRANTS the Government's request to exclude references to punishment.

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that the Government's Motion in Limine, (ECF No. 2514), is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that the Motions for Joinder, (ECF Nos. 2651, 2676), are **GRANTED**.

**DATED** this ___23___ day of October, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court