UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:16-cr-46-GMN-PAL |
| vs. | ) | |
| | ) | **ORDER** |
| CLIVEN D. BUNDY *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court are the Motions in Limine, (ECF Nos. 2475, 2477), filed by Defendant Ryan W. Payne ("Defendant") to exclude unfairly prejudicial testimony from trial, including testimony by Agent Seyler. Co-defendants Cliven D. Bundy, Eric J. Parker, and O. Scott Drexler filed Motions for Joinder. (ECF Nos. 2512, 2543, 2544, 2549). The Government timely filed a consolidated Response. (ECF No. 2611). Defendant filed a consolidated Reply. (ECF No. 2620). For the reasons discussed below, the Court **GRANTS in part and DENIES in part** Defendant's Motion.

I. **BACKGROUND**

On March 2, 2016, a federal grand jury sitting in the District of Nevada returned a Superseding Indictment charging nineteen defendants with sixteen counts related to a confrontation on April 12, 2014, with Bureau of Land Management ("BLM") Officers in Bunkerville, Nevada. (ECF No. 27).

II. **LEGAL STANDARD**

A. **Motion in Limine**

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). In order to satisfy the burden of proof for

Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)). In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41 (noting that in limine rulings are always "subject to change," especially if the evidence unfolds in an unanticipated manner).

### B. Applicable Rules of Evidence

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015).

FRE 403 requires the Court to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993); *see* Fed. R. Evid. 403. "[P]rejudice alone is insufficient; unfair prejudice is required." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (citing *United States v. Bailleaux*, 685 F.2d 1105, 1111 & n. 2 (9th Cir. 1982)). Unfair prejudice "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may

cause a jury to base its decision on something other than the established propositions in the case." *Id*. (internal quotation marks and citation omitted).

As to FRE 404(b), evidence of prior crimes, acts, or wrongs is not admissible to prove the character of an accused in order to show action in conformity with that character. *Arambula-Ruiz*, 987 F.2d at 602; Fed. R. Evid. 404(b)(1). However, this evidence can be admitted under FRE 404(b) if the evidence is used to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b)(2). In order to be properly admitted under FRE 404(b), evidence must satisfy four requirements: "(1) it must prove a material element of the offense for which the defendant is now charged; (2) in certain cases [where knowledge or intent are at issue], the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time." *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993).

### III.   DISCUSSION

**A**. **Motion in Limine to Exclude Agent Seyler's Testimony**

Defendant seeks to exclude several statements made by Agent Seyler ("Seyler") that allegedly constitute either "impermissible [FRE] 404(b) evidence, irrelevant evidence under FRE 401 or evidence that is more prejudicial than probative under FRE 403." (Def. Mot. 3:4–6, ECF No. 2475). Specifically, Defendant requests to exclude Seyler's testimony that: (1) he investigated cases relating to domestic terrorism and militias; (2) he had been investigating Defendant for almost a year prior to April 12, 2014; (3) Operation Mutual Aid ("OMA") considered becoming involved in two prior events involving mobilizations against officers; and (4) Be on the Lookout For ("BOLOs") had been issued on Defendant. (*Id.* 4:6–10, 5:2–3). Defendant argues that "[t]his evidence is not relevant" because it "does not advance proof of the government's case at all." (*Id.* 4:10-11, 4:22–24). According to Defendant, such evidence

would "provide the jury unfairly prejudicial information and allow for decisions to be made on an improper, emotional basis." (*Id.*).

The Government responds that "Seyler's familiarity with militia extremism provides context and credibility to steps that he undertook in his investigation of [Defendant]." (Resp. 5:6–7, ECF No. 2611). The Government argues that Seyler's investigation of Defendant before April 12, 2014, shows Defendant's motivation "to have a forcible confrontation with government agents and that Bundy Ranch provided that opportunity." (*Id.* 5:10–11). Additionally, the Government avers that "Payne's other OMA missions show that his mission and motivation at Bundy Ranch was to seek a forcible confrontation with [the] government. [The missions] show that he had the intention to do the crimes charged in the indictment, particularly, to assault and threaten federal officers." (*Id.* 5:19–23). The Court addresses the sufficiency of Defendant's arguments in turn.

*1) Testimony Concerning Prior Assignments and Investigations*

The Court finds that Seyler's testimony about his prior assignments—including statements regarding domestic terrorism, militias, and the length of his investigation of Defendant—provides foundation for his testimony. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). However, the Court maintains its prior Order that for an agent discussing his or her own background, training, and experience, references to "domestic terrorism" must be relevant, and the Government is cautioned to keep any such testimony brief and limited in order to minimize any prejudice. (*See* Order 7:21–25, ECF No. 1543). Therefore, the Court grants in part and denies in part Defendant's Motion by limiting the Government's use of the terminology "domestic terrorism" and "militias" to a foundational purpose.

### 2) Testimony Concerning the Two OMA Missions

The Court finds that the Government's use of Seyler's testimony concerning the two OMA missions is relevant to show Defendant's motivation to confront government agents, which is an acceptable purpose under FRE 404(b)(2).  In particular, this evidence is permissible to prove assault of a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b), and threatening a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B). Furthermore, the Court finds this evidence similar to the conduct charged because the missions with the OMA directly concern Defendant's past conduct with law enforcement.  The Court also finds that the proof of this prior conduct is based upon sufficient evidence and is not too remote in time.  This testimony is not substantially outweighed by the danger of unfair prejudice because Seyler's testimony is more probative than prejudicial.  Further, evidence that OMA considered becoming involved in other missions where individuals mobilized against officers does not rise to the level of unfair prejudice. *See Skillman*, 922 F.2d at 1374.  The Court is not convinced that this evidence will influence the jury to base its decision on something other than the established propositions in the case. *Id.*  Should Seyler testify about his investigation of Defendant, his testimony is relevant and probative of Defendant's motive. The Court therefore finds that the test under FRE 404(b) is satisfied and rejects Defendant's request to exclude Seyler's testimony about the OMA missions.

### 3) Testimony Concerning BOLOs

The Court finds that the Government has failed to demonstrate the relevance of the BOLOs on Defendant.  Notably, the Government has not identified the reason the BOLOs were issued on Defendant, the Court finds that the BOLOs themselves are not enough to show Defendant's motive to commit the crimes charged. *See Vizcarra-Martinez*, 66 F.3d at 1012.  As such, the Court excludes the evidence pertaining to the BOLOs.

**B. Motion in Limine to Exclude Irrelevant and Unfairly Prejudicial Testimony**

Defendant seeks to exclude "testimony that is barred by [FRE] 401 and 403 because either (1) it is irrelevant or (2) its minimal probative value is substantially outweighed by the risk of unfair prejudice and confusing the jury." (Def. Mot. 5:7–9, ECF No. 2477). Specifically, Defendant moves to exclude testimony regarding: (1) the BLM and local law enforcement officers' degree of fear and its effect on their lives; (2) reports of threats against federal officials and others; (3) cussing and yelling at BLM agents as they left the wash; (4) a statement that someone would find BLM Special Agent Mark Brunk ("Brunk"); (5) description of a "fatal funnel" and "Calvary formation" taken by protestors in the wash; (6) fear of harm to women, children and colleagues; (7) Special Agent Michael Johnson's ("Johnson") investigation; (8) the thousand-yard stare; and (9) a planned attack on the agents' hotel. (*see generally* Def. Mot. at 5–16).

*1. Degree of Fear and Its Effect*

BLM and local law enforcement officers have testified in the past "about the degree of fear they experienced while confronting protestors at the wash on April 12, 2014." (*Id.* 5:12–13). Defendant provides the following examples of this testimony:

1. Special Agent Mark Brunk testified this was his second scariest experience as a law enforcement officer, and that the first one involved [a] shooting.
2. Another witness, Sergeant Serena, said the fear he experienced was so severe that he sent text messages to his loved ones telling them he loved them, in case he never saw them again.
3. Dave Keltner, a ranger for the National Park Service, testified: (1) he expected to die in the wash, (2) he believed he would never see his family again, (3) he thought he would see his friend's head explode, and (4) he made his peace with God that afternoon.
4. Agent Scott Swanson testified he "prayed to God that he would take care of his wife and kids if he were to die."

5. Toni Suminski testified that another individual who was assigned to the communications center left the scene of the confrontation because she could not handle the stress.
6. Special Agent Robert Shilaikis compared his fear on April 12th to the fear he experienced while serving in Iraq and Afghanistan.
7. Ranger Gregory Johnson testified he saw other officers on his "skirmish line" crying during the confrontation.
8. Most law enforcement officials testified to a number on a scale from 1 to 10 to explain the level of fear they felt that day.

(*Id.* 5:14–6:9). Defendant claims that "the degree of fear a victim feels is not relevant to a finding of guilt" for the charges of "conspiring to impede and injure a federal officer, in violation of 18 U.S.C. § 372; assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b); and threatening a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B) against Defendant. (*Id.* 6:19–23). Defendant avers that this testimony is not relevant because case law about true threats "does not require the government to prove (1) the listener subjectively felt afraid or (2) if so, what degree of fear he experienced." (*Id.* 8:12–13). Additionally, Defendant asserts that testimony "about how those government officials' fear affected their lives after the confrontation was over[ ]" is irrelevant because "[w]hether the witnesses experienced trouble in their personal or professional lives months later simply does not bear on how a reasonable person would interpret the defendants' conduct[.]" (*Id.* 8:16–21). Additionally, Defendant argues that, to the extent the Court finds the testimony relevant, the Court should nonetheless exclude the testimony on the basis of FRE 403. (*See id.* 8:22–23).

The Government responds that the fear the officers felt is relevant because "[a]ssault on a federal officer, for example, requires that a reasonable person would feel an apprehension of an imminent bodily contact. The fact that officers felt that they would be shot or stampeded shows that a reasonable person would think the same." (Resp. 6:17–20). Further, the

Government argues that Defendant "cites no law, and surely none exists, that muzzles an assault victim from describing their belief that they would be harmed." (*Id.* 7:2–3).

The Court finds that the degree of fear the officers felt is relevant. "Alleged threats should be considered in light of their entire factual context, including the surrounding events and *reaction of the listeners*" when determining if there was a threat to assault a federal law enforcement officer, in violation of 18 U.S.C. § 115. *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990), *overruled in part on other grounds* by *United States v. Hanna*, 293 F.3d 1080 (9th Cir. 2002) (emphasis added); *see United States v. Steward*, 472 F. App'x 589, 591 (9th Cir. 2012). Because the officer's testimony describes their reactions as listeners this evidence is relevant and probative. Additionally, the Court finds that the degree of fear and its effect are more probative than they are prejudicial to prove the conspiracy to impede and injure a federal officer, in violation of 18 U.S.C. § 372; assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b); threatening a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B); and extortion by force, violence, or fear in violation of Title 18 U.S.C. § 1951. (*See* Superseding Indictment ¶¶ 158, 164, 168, 180). Therefore, evidence of the degree of fear and its effect should not be excluded.

### 2. Reports of Threats

Defendant claims that "[t]estimony about a bomb threat by an unknown caller cannot be relevant to showing Mr. Payne, or any of his co-defendants, conspired to impede a federal officer, assaulted a federal officer, threatened a federal law enforcement officer, or engaged in any of the other conduct alleged in the superseding indictment." (Def. Mot. 9:19–23, ECF No. 2477). The Defendant also seeks to exclude the following threats:

1. In her FD-302, BLM Ranger Alexandra Burke indicated she spoke with Jessica and Shayne Sampson, the Utah contractors the government hired to hold the Bundys' cattle. Ranger Burke wrote that the contractors reported receiving death threats,

       although the FD-302 does not indicate who made the threats or exactly what they said.

2. Ranger Burke also wrote in her FD-302 that John Simms, a member of her trap team, left the operation because he was concerned about "inquiries" his family was receiving. According to Ranger Burke's FD-302, Simms was afraid these inquiries—from unknown people, at unknown times—would escalate into threats and possible harm to his family.
3. BLM Ranger Bradley Sone also completed an FD-302, in which he said Mike Carpenter, Ryan Parr, and Mike Roop had all received death threats as a result of the April 9, 2014 incident.
4. Special Agent Ed Demolino's [M]emorandum of Activity (MOA) alleges that the Holiday Inn near Bunkerville received seven threatening phone calls. In one of those calls, the caller allegedly said that if BLM agents were not kicked out, the desk employee would be dragged out and shot in the head.

Defendant claims that "[e]vidence of these alleged threats is irrelevant under [FRE] 401 as there is absolutely no evidence the threats were made by [Defendant], his co-defendants, or even any unindicted co-conspirators." (*Id.* 11:3–5). Defendant argues that these threats have no tendency to make any fact in consequence more probable, and "even if these alleged threats are somehow probative, that probative value is substantially outweighed by the likelihood of unfair prejudice." (*Id.* 11:5–8).

       The Government responds that Defendant "is charged with threats, conspiracy to threaten, conspiracy to impede officers by use of threats, obstructing justice by threat, etc. If the government can show that threats were issued or solicited by a possible co-conspirator, they are relevant and there is no unfair prejudice." (*Id.* 8:6–9). The Government alleges that the fact that "the Bundys, and their supporters, plastered contractor information all over social media, and then, exactly as the Bundys hoped, people then called the contractors to harass and threaten them, is evidence of conspiracy." (*Id.* 8:10–12).

       The Court agrees that the threats are being offered to show that there was a conspiracy to threaten officers, conspiracy to impeded officers by use of threats, and obstruction of justice by

use of threats, and thus, the threats are relevant to multiple counts in the Superseding Indictment. *See Velazquez*, 793 F.3d at 1028. As long as the Government can tie these threats to an unidentified co-conspirator, the threats are probative. *Id.* Further, beyond the conclusory assertion that the at-issue threats will trigger an emotional response, Defendant fails to sufficiently identify how the threats are unfairly prejudicial. (Def. Mot. 10:4–9). Because the evidence is probative, and Defendant has not identified how the threats would trigger an emotional response, the Court declines to exclude the evidence of threats.

### 3. Cussing and Yelling at BLM

Defendant specifically identifies the testimony of Special Agent Whitworth, who explained that as the BLM was leaving the impound site on April 12, 2014, "members of the crowd continued to yell and cuss at them." (Def. Mot. 11:14–15, ECF No. 2477). Defendant argues that "[a] vague statement that an agent heard yelling and cussing from some unknown number of people at the wash, where hundreds had gathered in protest, is not relevant to the government's showing [under FRE 403], as it does not 'ha[ve] any tendency to make a fact [of consequence] more or less probable than it would be without the evidence.'" (*Id.* 11:22–25). Further, Defendant claims that "Agent Whitworth did not testify as to the contents of that speech. Thus the testimony does not demonstrate that the speech in question would establish liability, or even contribute to establishing liability under § 372, § 111(a), § 115(a)(1)(B), or any other statute." (*Id.* 12:2–5).

The Government responds that "hurling angry words" is a "pre-assault indicator[ ]" and is "relevant to help the jury understand why the officers were afraid and did not consider the mob surrounding them to be a peaceful protest." (Resp. 7:5–7). Moreover, the Government avers that "the fact that the officers feared [the standoff] would escalate, and had to evacuate, is relevant to numerous charges including obstruction of justice and conspiracy to impede officers." (*Id.* 7:10–12).

The Court finds that the testimony concerning cussing and yelling is probative of the fear felt by the officers, and therefore, is relevant to the counts charged, including conspiring to impede and injure a federal officer, in violation of 18 U.S.C. § 372; assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b); threatening a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B); and extortion by force, violence or fear in violation of Title 18 U.S.C. § 1951. (*See* Superseding Indictment ¶¶ 158, 164, 168, 180). Any alleged prejudicial emotional response from the jury is substantially outweighed by the probative value of the cussing and yelling. *See Arambula-Ruiz,* 987 F.2d at 602. Therefore, the Court holds that the evidence is relevant and should not be excluded under Rule 403.

### 4. *Statement that Someone Would Find Brunk*

Brunk testified that "while he was at the wash on April 12th, he heard someone in the crowd yell that he or she would 'come find' Agent Brunk." (Def. Mot. 12:15–16, ECF No. 2477). Because there were multiple protestors at the wash on April 12, 2014, Defendant argues that any of them could have yelled the statement mentioned by Brunk. (*Id.* 12:19–22). Defendant claims that because the statement is vague it is irrelevant and that its prejudicial value substantially outweighs it probative value. (*Id.* 12:22–25). "To be admissible, such evidence must be relevant to an issue at trial." *United States v. Noriega-Lopez*, 47 F.3d 1177 (9th Cir. 1995). The Government does not explain why this particular evidence is relevant in its Response. Because relevance of the statement that someone would find Brunk has not been established, the Court finds that it should be excluded under FRE 402.

### 5. *The "Fatal Funnel" and "Calvary Formation"*

Defendant seeks to exclude BLM Ranger Agent Patrick Apley's ("Apley") testimony stating: (1) that a silver vehicle pulled into the command post where he was stationed and looked as though it was going to 'ram' the BLM agents there; (2) that the topography of the wash formed a 'fatal funnel' that exposed officers to danger; and (3) that the protestors on

horseback took up a 'cavalry formation' when they entered the wash. (Def. Mot. 13:3–6, ECF No. 2477).  Defendant argues that "[w]hile the landscape of the wash and the formation of the protestors may be relevant to showing BLM agents reasonably felt threatened, the government can make these points without eliciting testimony that is so likely to provoke an emotional response." (*Id.* 13:7–10).  Moreover, "Apley could easily explain that he felt the silver pickup was going to hit him and other BLM agents without using language such as 'ram us.'" (*Id.* 13:14–15).  Defendant avers that the probative value of this testimony is "minimal at best" and should not be admitted. (*Id.* 13:16).

The Government responds that "The effective nature of the assault, using a fatal funnel from which retreat or cover were difficult, or utilizing numerous mounted horsemen who could trample the officers, is a [sic] relevant to show a conspiracy to assault, to threaten, and to impede officers." (Resp. 7:14–18).  The Government also argues that although the evidence of what Defendant "conspired to do might provoke an emotional response from the jury, . . . the government has the right to prove Payne committed these crimes." (*Id.* 8:1–4).

The Court finds that Apley's testimony goes to the fear and threat of harm that the officers felt.  The fear felt by the officers is probative of the charged counts in the Superseding Indictment. *See Orozco–Santillan*, 903 F.2d at 1265.  "Although the statement possibly incite[s] *some* emotional response in the jurors, [FRE] 403 only forbids introduction of evidence that 'tends to affect adversely the jury's attitude toward the defendant *wholly apart from* its judgment as to his guilt or innocence of the crime charged.'" *United States v. Long*, 83 F. App'x 174, 175 (9th Cir. 2003) (quoting *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir.1987)) (emphasis added).  Here, any prejudicial emotional response from the jury that arises from this evidence is substantially outweighed by its probative value.  Thus, the Apley testimony should not be excluded.

### 6. *Fear of Harm to Women, Children and Colleagues*

Defendant moves to exclude Johnson's testimony that "the presence of women, children, and unarmed people at the wash caused him great concern because it made it difficult for BLM agents to use deadly force to control the protestors, if necessary." (Def. Mot. 13:24–26, ECF No. 2477). Defendant claims this testimony is irrelevant and unfairly prejudicial because "the statutes in the superseding indictment criminalize impeding, assaulting, and threatening a federal officer; that there were 'women and children' at the protest who could have been injured has no relevance to liability under those statutes." (*Id.* 14:1, 14:7–9).

The Government responds that this is relevant evidence because the officers' experiences "can help the jury put this fear into context . . . and [is] helpful to the jury to understand why they thought an immediate bodily contact was going to occur." (Resp. 6:23–7:2). Further, the Government claims that "[n]one of the proffered evidence has the tendency to provoke an emotional response in any inappropriate way that would warrant precluding the evidence at trial." (Resp. 8:19–20).

The Court finds that the fear of harm to women, children, and colleagues is probative of the officers' fear. *See Orozco–Santillan*, 903 F.2d at 1265. The fact that women and children were at the protest goes to the officers' fear that matters would escalate, because the women and children were allegedly being used as human shields. (Gov't Resp. 7:19–20). Further, the emotional response that may be provoked by evidence of dangers posed to women and children is substantially outweighed by the probative value of the evidence. *See United States v. Skillman*, 922 F.2d at 1374. Therefore, Johnson's testimony about the presence of women, children, and unarmed colleagues should not be excluded.

### 7. *Johnson's Investigation*

Defendant also seeks to exclude testimony from Johnson regarding his visit with Laura Lee, co-Defendant Dave Bundy's sister-in-law, and co-Defendant Ryan Bundy's "slanderous"

comments about BLM agents. (Def. Mot. 14:19–23, ECF No. 2477). Specifically, Johnson said that when he asked Laura Lee about Dave Bundy, "she said she did not know him and slammed the door on [ ] Johnson." (*Id.* 14:21–22). Defendant claims this testimony is inadmissible under FRE 401 because "Ms. Lee is not a defendant in this case, and her conduct cannot be attributed to" Defendant. (*Id.* 14:24–25). Moreover, "[s]peaking ill of government officials is not a crime, and such statements from Ryan Bundy shed no light on whether [Defendant] threatened, assaulted, or impeded a federal official or otherwise engaged in illegal conduct." (*Id.* 15:3–6). The Government does not address this evidence nor does it explain why this evidence is relevant in its Response. The Court finds that Johnson's testimony about Laura Lee and Ryan Bundy's "slanderous" statements should be excluded under FRE 402 because the evidence's relevance has not been established.

### 8. The Thousand-yard Stare

Defendant wishes to exclude Ranger Keltner ("Keltner") testimony "that when he arrived at the wash on April 12th, he observed two men with tactical combat vests and AR-15-style rifles who were giving him the 'thousand-yard stare.'" (Def. Mot. 15:12–14, ECF No. 2477). Ranger Keltner testified that the "thousand-yard stare" is a "'pre-assault indicator' that, in his training and experience, suggests a violent encounter with [sic] is imminent" and convinced him that they were "on the cusp of a deadly force incident." (*Id.* 15:14–15, 15:17). Defendant argues that this testimony is irrelevant because "Ranger Keltner did not identify the two men giving him the "thousand-yard stare," and the government offered no other testimony suggesting those two men were Mr. Payne or his co-defendants." (*Id.* 15:18–20).

The Government responds that the thousand-yard stare "is relevant to help the jury understand why the officers were afraid and did not consider the mob surrounding them to be a peaceful protest." (Resp. 7:5–7). Further, the Government asserts that Defendant "does not

explain how this information is unfairly prejudicial except to say that talk of a serious incident will inflame the jury." (*Id.* 7:7–9).

The Court finds that the "thousand-yard stare" testimony from Keltner is probative of the officers' fear and the alleged threat level that they felt. *See Orozco–Santillan*, 903 F.2d at 1265. Further, Defendant fails to identify how Keltner's testimony is unfairly prejudicial. Defendant claims that the testimony describing the incident was extremely serious and one involving deadly force provokes an emotional response in the jury. (Def. Mot. 15: 25–26). However, the Court is not convinced that this testimony would appeal to the jury's sympathies and create unfair prejudice. *See Skillman*, 922 F.2d at 1374. Because the evidence is probative and Defendant has failed to establish that an emotional response would be triggered, the Court rejects Defendant's request to exclude Keltner's testimony regarding the "thousand-yard stare."

### 9. Planned Attack on the Agents' Hotel

Lastly, Defendant seeks to exclude Special Agent Brandon Novotny's ("Novotny") testimony that "he was under the impression someone had planned an attack on the agents' hotel for April 11th." (Def. Mot. 16:6–7, ECF No. 2477). Defendant moves for exclusion on the basis of FRE 401 and 403. First, Defendant claims, "[u]ndetailed, unverified reports about unknown people are simply irrelevant to Mr. Payne's guilt or innocence." (*Id.* 16:14–15). Second, "[i]nflammatory allegations that someone had plans to attack law enforcement officers are likely to 'provoke[ ] an emotional response in the jury or otherwise tend[ ] to affect adversely the jury's attitude toward [Defendant] wholly apart from its judgment as to his guilt or innocence of the crime[s] charged.'" (*Id.* 16:16–20). The Government does not specifically address Novotny's testimony in its Response. However, the Court does see the potential relevance of this evidence with respect to the conspiracy charges. For this reason, the Court finds that exclusion of Novotny's testimony is premature at this time, but the Government will be required to demonstrate the relevance of this evidence at trial.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motions in Limine, (ECF Nos. 2475, 2477), are **DENIED in part and GRANTED in part**.

**IT IS FURTHER ORDERED** that the Agent Seyeler's testimony about the BOLOs on Defendant, Brunk's testimony, and Johnson's testimony as described in this Order are excluded.

**IT IS FURTHER ORDERED** that the Motions for Joinder, (ECF Nos. 2512, 2543, 2544, 2549), are **GRANTED**.

**DATED** this 24 day of October, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court