DANIEL J. HILL, ESQ.
NV Bar # 12773
Hill Firm
J. MORGAN PHILPOT, ESQ.
Admitted *Pro Hac Vice*
JM Philpot Law, PLLC
228 South 4t Street, Third Floor
Las Vegas, Nevada 89101
Tel:   (702) 848-5000
dan@hillfirmlawyers.com
morgan@jmphilpot.com
*Attorneys for Defendant Ammon E. Bundy*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO.: 2:16-CR-00046-GMN-PAL** |
| Plaintiff, | |
| vs. | DEFENDANT AMMON E. BUNDY'S SECOND MOTION FOR IMMEDIATE MISTRIAL. |
| Cliven Bundy, *et al.*, | |
| Defendants. | |

Based upon the **government's motion** this morning, the court's subsequent ruling, and the *content of the government's opening statements* (discussed in detail below)– it is apparent that the legal grounds for a mistrial exist, and the remedy is essential to protect Mr. Ammon Bundy (and the other co-defendants) and their due process and other legal rights.

As the Court is aware, a prior motion (filed on Nov. 13) for mistrial and dismissal, or in the alternative for a continuance, were denied (bench: Nov. 13) without prejudice as premature. In arguing *United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008, counsel for Ammon Bundy previously argued that the newly disclosed information by the government on November 11 and November 12 was significant, and **effected the planned opening statements** of the defense and likely the planned initial cross-examination of the government's early witnesses.  This meets the standard for mistrial, and if not

adequately remedied by a new trial or some other appropriate means, justifies dismissal on Fifth Amendment grounds or via the Court's supervisory authority. Recognizing that the Court denied the motion, without prejudice, including a preliminary finding that the "prejudice" at issue was likely "less" or lower than that occurring in *Chapman* because of the procedural posture of this case now, and because the new information appeared to be consistent with the existing defense strategy – the defense respectfully disagreed and continued preparing, strategizing, and discussing (among defense counsel and with Defendant Ammon Bundy) for opening statements and initial cross-examinations. Now, there has been *a new development*.

This morning, the defense team received an email from the government explaining that it would be asking for a continuance this morning, based in part, upon its chance to give a more detailed review of Defendant Ammon Bundy's motion filed yesterday. Then, in court this morning, the government further explained, after making an oral motion for continuance, that additional grounds for the requested continuance included the government's need to review government emails not in the prosecution team's possession, and also – *and this is exceptionally significant* – the need of the government, based upon allegations made in Ammon Bundy's prior motion, to re-review the materials that it has not already produced to the defense, meaning material in its possession that it has previously "suppressed", to ensure that it has complied with its obligations to do so.

In response, the Court denied the government's request for a continuance (like it had denied Ammon Bundy's alternative request for relief yesterday, without prejudice) and also denied the joint defense oral motions this morning, agreeing that more time was needed, to avoid moving forward and creating irreparable prejudice – but requesting instead of a continuance, a mistrial.

This motion builds on the previously filed motion, and incorporates the factual and legal recitations made there, but does so to address this new circumstance – and *the Court's order this morning, along with the specific content of the government's opening statements*. The material just turned over to the defense *on Sunday, November 12, Saturday, November 11* and late in the day *on November 7, 2017* – now must be viewed in light of the government's representations and request this

2

morning. Both the government and the joint defense agreed unanimously, that by moving forward, the Court would create a situation that creates prejudice that will not be possible to fully remedy going forward.  That is *in fact* the case, and now that it *has happened*, that prejudice exists and is growing every minute the jury is hearing statements, evidence, and witnessing proceedings. Mr. Bundy cannot participate in what he reasonably fears is invited error − invited by moving forward when there is ample and admitted legal and factual basis to wait until full disclosure is provided.  Some information was unquestionably just provided in the last several days, and now the government has candidly acknowledged to the Court, after reviewing our motion more fully, that it needs more time to confirm it has complied.  This is the same as proffering that it cannot − as of now − affirm that it has complied. This is significant, because when the government affirmatively states to the court that it cannot confirm, in light of what it now knows, that it has complied fully, in conjunction with the late disclosures made this past week − there is no question about the legal and factual basis requiring mistrial, and going forward only ensures both mistrial, and additional significant grounds for dismissal and enjoining future prosecution based upon double jeopardy grounds, due process grounds, supervisory grounds, etc. At the very least, these proceedings have now ventured into Chapman territory where under the best circumstances, the trial is, "nothing more than a colossal waste of everybody's time", 524 F.3d at 1079, and worse − a predictable increase in the prejudice created to the defense, which already justifies dismissal.

## MEMORANDUM OF POINTS AND AUTHORITIES

In ***opening statements***, the government stated that Cliven Bundy started disseminating information on the internet, social media, including "false information" that the BLM was stealing his cattle.  He presented photos of the alleged "false information" being displayed on signs and plaques.  The government argued that making statements about "stolen cattle" or "stolen cows" was a critical part and overt act of the alleged conspiracy. The government also stated that law enforcement officers were

3

involved to provide "security" – using as an example, the arrest circumstances of Dave Bundy.  But, what the government didn't address in it opening was the pe-arrest buildup of law enforcement. Specifically, the government argued that after the "arrest of Dave Bundy" the "message changed" and the social media messages escalated to "they have got my boys" and they have "snipers" pointing at us. But, as the Court knows, the "sniper" messaging has some factual context just disclosed to the defense. Namely that fully armed BLM officers with AR-15 assault rifles and FBI SWAT with "snipers" had set up a Forward Operating Base less than two miles from the Bundy Ranch home – several days before the Dave Bundy arrest.  Thus, the new information provided, and the new "review" the government admitted it needs to do, concerns the defense's ability to use this newly disclosed factual basis – to address, in opening, the evidence previewed by the government.  Further, the government stated that the social media messaging put out by "the Bundys" that "now they have our house surrounded" came after the Dave Bundy arrest, and that it was "false" but the prosecution didn't disclose *until the last few days*, that it came while an army of 20+ FBI agents had pre-planned and begun to establish the FOB Malcom a short distance from the Bundy Ranch home, beginning April 5 (before the Dave Bundy arrest). This is significant because "all" of the actions of the defendants, according to the Superseding Indictment, were undertaken and performed with the *intent* and *purpose* of "threaten[ing], intimidate[ing], and extort[ing]" federal officers. Doc. 27 at 3, ¶1. As a primary support for this allegation, the indictment alleges that "leaders and organizers" of the purported "conspiracy" engaged in specific overt acts of "force, threats, and intimidation to stop the impoundment" of Bundy cattle, by "flooding the internet with false and deceitful images and statements", *id.*, and further alleges that to recruit others into the conspiracy the defendants in this case communicated a false claim by Cliven Bundy that "they have my house surrounded" and "[the BLM] are armed with assault rifles…they have snipers[.]" *Id.* at p. 21. For this allegation to stand, Cliven Bundy's statement had to be false and that

the statements now made by the government in its opening were a true depiction of what took place. But, **the previously hidden information, disclosed just this week, is that the statement of Mr. Bundy were precisely true.** Or, at the very least, provides a good evidentiary basis to explain to the jury why he believed that was the case. *It is impossible to overstate how this relates directly to the alleged motives, plans and actions of each defendant and how it materially changes the defense preparation before and during trial*. Now the government has admitted to the Court, that on this very issue and this very defense theory, it cannot confirm yet that it does not have additional suppressed information in its possession – on top of this recently disclosed *Brady* material. Expecting defense opening now, is prejudicial because any changes necessitated going forward will look to the jury like the defense is inconsistent, or less than full of conviction on these issues, or that we chose not to present some information during our opening for a strategic reason, when it reality it is that we haven't had the time to adjust to the current circumstances. It is wholly backwards to suggest that the new evidence is consistent with the defense so it is less prejudicial, in fact[1] – the new evidence being consistent explains why we need to be able to reference that evidence, all of it, as supporting our

---

[1] During the last nine days, from November 3 to November 12, the defense has learned that in support of that one wireless camera and the related surveillance, SAC Love employed, dispatched, and inserted multiple BLM and NPS officers who were heavily armed with AR-style assault rifles and who used armored vehicles all around the Bundy Ranch home from April 5 thru April 8, 2014. At the same time, the FBI was deploying and utilizing multiple "snipers" in the area and keeping administrative logs of this information while the surveillance camera's live video feed was being transmitted to SAC Love's Incident Command trailer (as well as to  two previously undisclosed locations; an FBI Tactical Operations Center ("TOC") and a field office Emergency Operations Center ("EOC")). Today we learned that the live feed was available to anyone else who was given access ot the camera's internet IP address. In addition, the defense has learned the names of never-before disclosed witnesses who viewed the live video surveillance feed from this camera, including specifically Wendy Collins (one of several TOC operators whose existence had not previously been disclosed along with other operators whose identities still have not been disclosed) who remembers watching the live feed for four days and who also recently located a "log file" that had previously assured the Court and the defense – did not exist.  Just yesterday prosecutors admitted that the log files exists, and producing it to the defense has revealed that it alone contains multiple, previously undisclosed facts related to the live video feed and observations made by previously undisclosed personnel while watching that feed. Are these log entries material and helpful to the defense? In several entries information confirms the existence of FBI snipers stationed at the FOB on Gold Butte Road, the dates and times of these snipers being "inserted" at specific locations; and other entries that purportedly describe conduct and incidents from April 5 thru 8, 2014 of Ammon Bundy, Ryan Bund, Harold Bundy, Cliven Bundy and several other previously undisclosed "surveillants."

defense.  The incorporation and adjustment already requires significant time.  *The Court should not undertake to jump into defense counsel's shoes, when both the defense and the government admit more time is needed, to comply with the law and constitutional standards at issue*. As additional prejudice, the defense was placed in a position during the government's opening, of deciding whether to object to false introductions of evidence that the government could not in good faith prove, because we do not yet have the full information related to the "snipers" and use of snipers at and around the Bundy Ranch home.  The risk of raising an objection, and having it overruled, on this critical point – because the full exculpatory picture has not been revealed, most has just been unfairly revealed, and both sides agree more is likely to be revealed.

Among the many other possible helpful uses related to the defense, this previously suppressed information directly rebuts the indictment's allegations about false statements. It also strongly infers additional exculpatory conclusions related to the motives behind the defendants' statements and for urgently requesting help via the internet - encouraging others to come to the Bundy Ranch in April 2014.   On top of this, the existence of this information and the content of these records has been repeatedly and falsely denied by prosecutors in proffers and offers of proof to the Court and to the defense. Not only does this new information flatly contradict repeated assurances given by prosecutors to the Court and the defense, but it directly confirms the Court's suspicions raised on the record on November 7, 2017 and the legal basis for both mistrial and dismissal.

## III.   ARGUMENT

In *Chapman*, 524 F.3d 1073 (9th Cir. 2008) the district court declared ***a mistrial*** after it was established that prosecutors had failed to meet the requirements of *Brady* and *Giglio*, **despite repeated prior assurances that the same had been met**. Here, the Court is aware of the repeated – and at times, almost condescending or exasperated assurances provided by Acting US Attorney Myhre on Nov. 7, Nov. 8., and on Nov. 13, that the government has met its obligations.  However, today, after

more carefully reviewing reading Ammon Bundy's prior motion, it has admitted that it needs more time to review **– its previously suppressed materials, and the new FBI materials – before it can make that same assurance now.** This is precise, legal grounds for mistrial. *See United States v. Bagley*, 473 U.S. 667, 682-683 (1985) ("We agree that the prosecutor's failure to respond fully to a *Brady* request may impair the adversary process…And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and ***to make pretrial and trial decisions*** on the basis of this assumption. *This possibility of impairment does not necessitate a different standard of materiality, however, for under the Strickland formulation the reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on* <u>the preparation or presentation</u> *of the defendant's case.*") (Emphasis added.)

Also, like the circumstances in *Chapman*, Mr. Myhre's prior proffers on Nov. 7 and Nov. 8 were both false and ill-advised because only he was in a position to know "full well that he could not verify these claims. *Chapman*, 524 F.3d at 1085. The government has today, admitted it can't verify those claims – which is the same as saying its prior verifications cannot be relied upon.

In any event, *Brady* does not require a finding of bad faith. *See Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). The government has now agreed that its prior assurances are not reliable, and under the law, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id*. at 437-38. The government has asked for more time to "learn" in light of Ammon Bundy's argument, and the Court has chosen to proceed with trial, rather than mistrial. But, "whether the prosecutor succeeds or fails in meeting this obligation…the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." *Id*. Regardless of what happens now, whether more late

7

disclosures or not, it is not disputable that the government has "failed" to make timely prior disclosures and now agrees it cannot provide timely assurance of the same. *See Bagley,* 473 U.S. at 682. It is entirely irrelevant how the "failure" is characterized, because "suppression" "withholding" and "failure to disclose" all have the same meaning for *Brady* purposes, and the disclosure requirements set forth in *Brady* apply to a prosecutor even when the knowledge of the exculpatory evidence is in the hands of another government agency. *See Giglio v. United States,* 405 U.S. 150, 154 (1972) ("The prosecutor's office is an entity and as such it is the spokesman for the Government."); *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002). In other words, today the USAO admits it needs to re-review its suppressed information, and it needs more time to *now* discover what it *has not previously endeavored* to discover. Either way, mistrial is required – lest the Court invite further prejudice and new legal error requiring dismissal, if indeed dismissal is not already required (which should be determined by an evidentiary hearing following mistrial, and the government's promised Thursday status update).

*Lest there be any question* – this is precisely **why *Chapman* included the initial mistrial**. *Chapman*, 524 at F.3d at 1083 ("One attorney noted that she would have opened the case differently had she known about the [previously undisclosed]… information. Another explained that if he called back witnesses who had already left the stand in order to present the impeaching information, the jury would likely view it as browbeating.") **It is patently unfair to force the defense to now guess how the jury will react to how the defense is now forced to adjust – due to the government's late, prejudice creating production of exculpatory information, and its admitted failure at this point, to provide assurances it has met it *Brady* and *Giglio* obligations.** *Id*. ("As Washington makes clear, a manifest necessity determination can be upheld based on an attorney's arguments in the record even when the trial judge did not explicitly reference those arguments.") The fact that the defense is now forced to make an opening statement, or defer, without adequate time to prepare, let alone adequate

time to act on the newly produced information – even after the government's recent admission that its prior assurances of *Brady* and *Giglio* compliance is unreliable - is unfair and legal error. "*Brady* information must be disclosed, furthermore, in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial. Thus, the Government must make disclosures in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007); *see also DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir.2006) ("The more a piece of evidence is valuable and rich with potential leaders, the less likely it will be that late disclosure provides the defense an 'opportunity for use' (quoting *Leka* ("When…a disclosure is first made on the eve of trial, or when trial is underway, the opportunity to use it may be impaired.")); *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir.2001) (The government is obligated to turn over *Brady* material "[N]o later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made.") A mistrial has been granted in circumstances where prosecutors hold back exculpatory information as long as possible from defense counsel. *Jenkins v. Artuz*, 294 F.3d 284, 287 (2d Cir. 2002).

## IV.   CONCLUSION

The Court should remedy current prejudice and act to deter future *Brady* related misconduct, to enforce the constitutional and rule based standards of fairness, and to impose appropriate sanctions for the government's cavalier approach to the discovery dispute up until now.

Respectfully submitted this 14th day of November 2017.

By: */s/ J. Morgan Philpot*

J. MORGAN PHILPOT, ESQ.
Admitted *Pro Hac Vice*
JM Philpot Law, PLLC
morgan@jmphilpot.com
*Attorney for Defendant Ammon E. Bundy*

9

1
2
3

**<u>CERTIFICATE OF SERVICE</u>**

4      I hereby certify that on this 14th day of November 2017, a true and correct copy of

5   DEFENDANT AMMON BUNDY'S SECOND MOTION FOR IMMEDIATE MISTRIAL.

6
7
                                                     By   */s/ J. Morgan Philpot*
8                                                            J. MORGAN PHILPOT, ESQ.
                                                           Admitted *Pro Hac Vice*
9                                                          JM Philpot Law, PLLC
10                                                         morgan@jmphilpot.com
                                                           *Attorney for Defendant Ammon E. Bundy*
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28